BARBARA BABCOCK, Individually and on Behalf of All Persons Employed by the County of Dutchess, Plaintiffs, v COUNTY OF DUTCHESS et al., Defendants.

Second Department, December 13, 1976

*Mangold & Mahar (Thomas D. Mahar, Jr.,* of counsel), for plaintiffs.

*James D. Benson, County Attorney (James M. Fedorchak* of counsel), for defendants.

HOPKINS, Acting P. J. The parties have submitted a controversy to us on an agreed statement of facts pursuant to CPLR 3222. The Taylor Law provides that public employees who have been determined to have participated in a strike shall be on probation for a period of one year "following such determination" (Civil Service Law, § 210, subd 2, par [f]). The question before us is the time of the commencement of the probationary period.

The parties have suggested various dates, all of which are related to progressive stages of the procedures described in the Taylor Law. We hold that the decisive date for the commencement of the probationary period is the time when the public employee was notified that it had been determined that he had participated in a strike in violation of the statute. In the context of this case that time was October 1, 1975.

I

The sequence of events forming the body of the controversy is relatively simple to state:

Certain employees of the County of Dutchess took part in a strike during July, 1975. The plaintiffs—employees of the county—were notified on October 1, 1975 by the County Executive, pursuant to section 210 of the Civil Service Law, that it had been determined that they had engaged in the strike, that they had a right to object to such determination within 20 days by filing an affidavit, supported by documen-

tary proof, controverting the determination, and that if they did not so object, or if the objection were not sustained, an amount equal to twice their daily rate of pay for each day that they had engaged in the strike would be deducted from their compensation. In addition, the notice stated that "you shall be on probation for a term of one year following the determination that you violated Section 210, during which you shall serve without tenure."*

In December, 1975 payroll deductions in accordance with the notice were made against the plaintiffs' salaries. Thereafter, some of the plaintiffs filed no affidavit; others filed an affidavit objecting to the determination referred to in the notice. Thus, the employees, it is stipulated by the parties, fell into the following groups:

1. Employees who filed no affidavit.

2. Employees whose affidavit had been dismissed on *June 30, 1976* for failure to raise an issue of fact.

3. Employees who had been granted a hearing, as the result of which it had been found that they had engaged in a strike, and who had been so notified *on July 28, 1976.*

---

\* The notice reads in full as follows:

"NOTICE OF VIOLATION OF SECTION 210, CIVIL SERVICE LAW.

"It has been determined that employees of the County of Dutchess participated in a strike from July 18, 1975 to July 24, 1975. It has been reported to this office that you were absent from your duties assignment on July 18, 21, 22, 23, and 24, 1975 without proper prior authorization from your supervisor. An employee who is absent from work without permission on the date or dates when a strike occurs is presumed to have engaged in a strike on that date. (Section 210 (2) (b), Civil Service Law.)

"In accordance with the provisions of Subdivision 2 of Section 210, you are hearby notified that you have been found to have committed a violation of that section by engaging in a strike on July 18, 21, 22, 23, and 24, 1975. You have a right to object to this determination in accordance with Subdivision 2(h) of Section 210, by filing with me, at this address and within 20 days of the date of this notice, your sworn affidavit, supported by available documentary proof, stating the facts upon which you rely to establish that you were not engaged in a strike.

"If you do not object, or if your objection is not sustained, there shall be deducted from your compensation an amount equal to twice your daily rate of pay for each day that you were on strike. In addition, you shall be on probation for a term of one year following the determination that you violated Section 210, during which you shall serve without tenure.

"S/William H. Bartles
William H. Bartles
County Executive

Certified Mail
Return Receipt Requested".

4. Employees who had been granted a hearing, but which had not yet been held.

5. Employees who had been granted a hearing, but the result of which had not yet been made.

6. Employees who had been granted a hearing but later had withdrawn their objection.

7. Employees who had been granted a hearing, but later had waived their rights to the hearing.

8. Employees upon whose affidavit no action had yet been taken.

## II

The parties have adopted several postures relative to the measurement of the probationary term. The plaintiffs contend initially that the probationary year began to run from the first day of the strike, i.e., July 18, 1975; they contend as a secondary position that it began to run from the date of the notice of determination sent to them by the County Executive, i.e., October 1, 1975.

The defendants, however, submit that the commencement of the probationary year is fixed by the circumstances of each of the groups. Specifically, the defendants urge that the proper starting point of the period is as follows:

A. For those employees described in Group 1, the date of the notice of determination from the County Executive, i.e., *October 1, 1975.*

B. For those employees described in Group 2, the date of dismissal of their affidavit, i.e., *June 30, 1976.*

C. For those employees described in Group 3, the date of the hearing officer's finding that they had engaged in the strike, i.e., *July 28, 1976.*

D. For those employees described in Groups 4-8, the probationary period has not yet begun to run, and will not begin until the date of the action taken with respect to them.

## III

The Taylor Law prohibits strikes by public employees. A public employee violating that prohibition is subject to sanctions of specified deductions from his pay and to the loss of tenure for a year, during which he shall be on probation (Civil Service Law, § 210, subd 2, pars [f], [g]). The loss of tenure and

the effect of a probationary term for a year render the employee open to dismissal for unsatisfactory performance, without hearing or the filing of charges, and affect his eligibility for promotion (Civil Service Law, § 63; Rules and Regulations of the Department of Civil Service, §§ 3.3, 4.5; 4 NYCRR 3.3, 4.5; see *Matter of King v Sapier,* 47 AD2d 114, affd 38 NY2d 960).

The sanctions may not be imposed unless the procedure prescribed by the statute is followed *(Matter of Sanford v Rockefeller,* 35 NY2d 547, 553-556, 562; cf. *Rendell v Alioto,* 42 AD2d 597). The chief executive officer, after investigation, must determine whether there was in fact a strike and the identity of those employees who participated in the strike. Then the statute adds, significantly: "Such determination shall not be deemed to be final until the completion of the procedures provided for in this subdivision" (Civil Service Law, § 210, subd 2, par [d]).

Those procedures include notice of the determination given by the chief executive officer to the employee and the employee's right to object "to such determination" (Civil Service Law, § 210, subd 2, par [e]); in the event the employee so objects within 20 days, the chief executive officer must "determine" whether, on the proof submitted, the employee had engaged in a strike; if an issue of fact is raised on the proof submitted, the chief executive officer shall appoint a hearing officer to hear the proof, and at the conclusion thereof the employee shall be notified of the finding; and in the event the finding is that the employee had not violated the statute, "the chief executive officer shall forthwith restore to the employee the tenure suspended pursuant to paragraph (f) of this subdivision" (Civil Service Law, § 210, subd 2, par [h]).

## IV

In construing the statute three considerations at least are operative—the purpose of the legislation, the intent of the legislators to achieve the purpose, and a reading of the provisions to the end that a coherent and reasonable relationship of the parts to the whole will result *(Matter of Horchler,* 37 AD2d 28, 31-32, affd 30 NY2d 725).

The enactment of the Taylor Law was accompanied by a legislative declaration of public policy that the purpose of the statute was "to promote harmonious and cooperative relationships between government and its employees and to protect

the public by assuring, at all times, the orderly and uninterrupted operations and functions of the government", and that, among other things, the enunciated public policy is effectuated by "continuing the prohibition against strikes by public employees and providing remedies for violations of such prohibition" (Civil Service Law, § 200).

The intent of the legislators in providing remedies for violations of the prohibition against strikes by public employees was, of course, to deter the occurrence of strikes by the imposition of penalties, the nature of which would be known in advance, and positive in their application when finally determined. The statute provides, accordingly, for the sanction of payroll deductions in clearly prescribed amounts from the compensation of the erring employees, and the loss of tenure for the certain period of one year by such employees. Moreover, the intent of the legislators appears clearly that the sanctions may not be imposed unless the employee charged with a violation has been given both notice and an opportunity to contest the charge.

Hence, in reading the statute we must bear in mind that the accomplishment of the legislative purpose to promote harmonious understanding between employer and employee and to deter the happening of strikes depends primarily on the certainty of the process by which the participation of an employee in a strike is determined to have existed and the kind of duration of the penalty which may be imposed accordingly. Hence, we should strive to reach a construction of the statute which will insure the fixation of the beginning date for the loss of tenure which will not necessarily vary as circumstances peculiar to one employee vary, but will apply to all employees involved in the strike.

The statute is plain that the time of the strike cannot be used to fix the beginning of the loss of tenure. The elementary requirements of due process demand that the identity of the employees participating in the strike be determined, that notice of the determination be given to each employee, and that each be granted the opportunity to contest the determination. However, the hearing afforded the employee and the steps provided by statute represent in effect the mechanism for the review of that determination. The date of the determination still remains the pivot upon which the imposition of sanctions is centered.

The statute requires that the chief executive officer make a

determination that the employee has taken part in a strike and notify the employee forthwith of that determination (Civil Service Law, § 210, subd 3, pars [d], [e]). Here it is agreed that the date of that determination is October 1, 1975. That date, we hold, is the date upon which the probationary period of one year begins to run. We do not think that the actions thereafter specified in the statute which may be taken by the employee to oppose that determination alter the starting point of the probationary period. Manifestly, the status of an employee who has promptly challenged the finding that he has violated the statute should not be hanging in suspense because of variables which may occur in the process of review because of the deferment of the hearing, or of the deliberation of the hearing officer, or other factors beyond the control of the employer or employee. True, it may be that as a result of the objections filed by an individual employee, it will be found, either on the statements contained within his affidavit, or as the result of a hearing, that the employee did not in fact engage in a strike. Upon the making of such a finding, the statute directs that "the chief executive officer shall forthwith restore to the employee the tenure suspended" (Civil Service Law, § 210, subd 2, par [h]). The employee's status is thus reinstated as it existed prior to the time that it was lost pursuant to the notice of determination given to the employee. Similarly, an employee who was successful in annulling the determination through the institution of an article 78 proceeding would enjoy the same restoration of tenure.

We recognize that delay in the completion of the steps involved in the process of review of the determination may work a hardship to the employee upon whom a sanction has been visited and introduce as well uncertainty in his status. For those reasons, we recommend that the administrative procedures for the review of the determination be undertaken as quickly as possible, and that the decision at the end of the process be made swiftly.

In the event the employee's objection should not be sustained, or the determination of his participation in a strike confirmed in the article 78 proceeding, the loss of tenure imposed as the result of the determination would continue to be measured from the date of the notice to him of the determination—in this case, October 1, 1975.

This construction of the statute, in our view, carries out its purpose and the legislative intent, affords certainty to the

process of meting out sanctions and treats individual employees engaging in the same strike similarly.

MARTUSCELLO, COHALAN, MARGETT and SHAPIRO, JJ., concur.

Judgment is directed fixing the date upon which the probationary period commenced as October 1, 1975, without costs or disbursements.