Irwin Brownstein, J.
May the State, via legislative enactment, take away from doctors the fees they earn in their *484 private practice? A shocking consequence, perhaps, on the face of it, but nevertheless this is the position taken by the defendants in this case of first impression concerning the applicability of article 8-AA of the Education Law entitled "Clinical Practice Income Management Corporations” (hereinafter sometimes referred to as Corporation).
The plaintiffs in this action consist of 29 licensed physicians in the State of New York who teach medicine full time at Downstate Medical Center College of Medicine (Downstate), which is operated, managed, and controlled by defendant the State University of New York (SUNY). They seek the following relief with respect to article 8-AA: (1) a declaratory judgment that this statute does not apply to fees for medical services rendered by plaintiffs to their own private practice patients because such services are not related to their employment at Downstate; (2) alternatively, if article 8-AA is found to be applicable to their private practice of medicine, then a declaratory judgment that the statute unconstitutionally deprives the plaintiffs of property without due process of law and denies them the equal protection of the laws, and that, consequently, such provisions of article 8-AA are unconstitutional and invalid; (3) an injunction restraining the defendants from requiring each plaintiff, as a condition of his employment by Downstate, to join and participate in a clinical practice income management corporation at Downstate; (4) an injunction restraining the defendants from dismissing or disciplining any plaintiff for his nonparticipation in a clinical practice program.
This action was commenced on August 8, 1975. On August 27, 1975, prior to serving their answer, defendants moved to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7) on the ground that the complaint fails to state a cause of action. The motion was granted by Special Term. The Appellate Division, Second Department, in a decision dated July 6, 1976 (53 AD2d 856, 857), reversed the dismissal of the complaint, stating: "Insofar as the complaint alleges that plaintiffs’ private clinical practice income would fall under the control of defendants in the event they exercised their authority under article 8-AA, the complaint is adequate in seeking a declaration and related injunctive relief to determine what portion of plaintiffs’ income is comprehended by the statutes in question. We have examined defendants’ arguments that plaintiffs are barred from commencing this action because of *485 the terms of an existing collective bargaining agreement, or because they possessed the absolute right to sever their employment relationship with the State, and find them to be without merit [citing cases].”
An answer was thereafter submitted by the defendants containing eight defenses. Plaintiffs then brought the instant motion seeking dismissal of each of the defenses and summary judgment.
One of the defenses interposed by the defendants is that "this case raises no case or controversy” in that no Corporation has yet been established at Downstate. Plaintiffs, however, allege, and this is sufficiently supported by them, that SUNY is considering the installation of such Corporations in its medical and dental schools. The establishment of a Corporation at Downstate could have a very serious impact on the plaintiffs in view of the defendants’ contention herein that the Corporation would encompass all of the doctors’ private practice income. Consequently, at the outset, this court concludes that this case involves a justiciable controversy which is now ripe for declaratory relief.
The court further concludes that there are no relevant triable issues of fact yet to be resolved. The only question for the court’s determination is the interpretation of article 8-AA —i.e., does it apply to the doctors’ private practice income?— an issue appropriately suitable for resolution on this motion for summary judgment.
Article 8-AA was added to the Education Law in 1973 as sections 385-a through 385-i. Because of its relatively recent adoption, counsel for the parties were unable to cite — and research has failed to reveal — any reported cases concerning this statute. Resort must therefore be had to the act itself.
In construing the statute, three considerations, at least, are pertinent — the purpose of the legislation, the intent of the legislators to achieve this purpose, and a reading of the provisions of the law so that a reasonable relationship of the parts to the whole will result (Babcock v County of Dutchess, 55 AD2d 37, 41; these three criteria are also found in the rules on statutory construction, to wit, respectively, McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 96, 92, 97, 98).
The purpose and intent of article 8-AA are conveniently set forth in the statute as section 385-a. It reads in its entirety as follows:
*486 "Statement of legislative intent
"It is the sense of the legislature that the current methods for the collection of, and accounting for, income generated by teaching professionals employed in a medical or dental school at a state university of New York medical center or health science center in the course of performing services related to their employment are inadequate and fail to serve properly the needs of the medical and dental schools, the state university system or the people of the state of New York. The purpose of this article is to provide a mechanism for the collection, management and ultimate disbursement, including disbursements for the purpose of making salary adjustments, of all such income and pursuant to which proper accounting and auditing measures may be implemented, and such purpose is hereby declared to be a public purpose, essential to the public interest.”
Other significant (at least for purposes of this court’s determination) provisions of the article include the following:
"§ 385-b. Definitions
"As used in this article, unless the context otherwise requires:
"(a) 'Clinical practice’ means the act of providing any form of medical and health care, including patient consultations, and the act of performing clinical investigation involving patients, for which acts a fee for professional services is customarily charged.
"(b) 'Clinical practice income’ means all income resulting from fees charged for professional services rendered in connection with clinical practice, but shall not include research grants, royalties, honoraria for lectures or income from consultations unrelated to patient care.”
"§ 385-c. Restriction on clinical practice
"Notwithstanding any other law or the provisions of any agreement or contract, no employee serving in a position of academic rank in a medical or dental school at a state university of New York medical center or health science center having in operation a clinical practice income management corporation formed pursuant to this article may engage in any clinical practice except as a member of such corporation and in accordance with the provisions of this article and with the rules and procedures promulgated by the governing board of such corporation. For the purposes of this section, *487 clinical practice at an affiliated institution shall be deemed to be clinical practice at a state university of New York medical or dental school. In addition to membership in the corporation, every such employee shall be a member of either a school-wide clinical practice plan or a clinical practice plan organized along one or more departmental lines. Selection of the plan structure shall be made on a departmental basis by vote of a majority of the members of the department. Membership in a corporation and a clinical practice plan shall, for the purposes of this chapter, be a condition of employment for any such employee who engages in clinical practice, except that the trustees may exempt from the provisions of this section such employees as are deemed to be engaged in part-time employment. Nothing herein shall prohibit the employment by the corporation of any member thereof.”
"§ 385-e. Purposes and powers of the corporation
"The purposes of the corporation shall be to collect, manage and disburse, on behalf of the medical or dental school, all clinical practice income generated by employees of the school engaged in clinical practice in connection with their employment, and each corporation created pursuant to this article shall have the following powers: * * *
"(g) To collect all clinical practice income generated by any of its members in accordance with a system established by the governing board and approved by the trustees and the state comptroller.”
Defendants’ construction of the scope of this entire article would encompass the following scenario: Downstate establishes a clinical practice income management corporation (§ 385-d). All professional employees, i.e., doctors, if they engage in clinical practice as defined in section 385-b (viz., rendering any patient care), must, as a condition of employment, become a member of the Corporation (§ 385-c). The Corporation would then collect all clinical practice income generated by the doctors, including, in accordance with the defendants’ interpretation, all fees earned by the doctors in their private practice (§ 385-e, subd [g]). How much, if any, of this income is then given back to the physicians is not discussed by the defendants and is therefore not part of this scenario.
In support of their proposition that clinical practice income includes the doctors’ fees from their private practice, the defendants rely on the above definitions of "clinical practice” *488 and "clinical practice income,” and upon an affidavit prepared by Dr. Thomas Mou, Provost for Health Services at SUNY. The thesis of Dr. Mou’s affidavit is that the imposition of limitations on patient fee income that can be earned or retained by the teaching doctor is justified for two reasons: (1) it enables the medical school to control the amount of time devoted by the doctor to an outside practice so that the practice will not interfere with his responsibilities as a faculty member; and (2) the private practice fees generated by the physician would be a significant and essential source of income for the support of the medical school.
While these may or may not be noteworthy objectives, they are nowhere to be found, either expressly or impliedly, in article 8-AA. In fact, Dr. Mou’s affidavit does not even appear to be directed specifically to this statute.
The purpose of article 8-AA is clearly set forth in section 385-a — to provide for a more improved system at a SUNY medical center for the collection of, and accounting for, income generated by the teaching professionals in the course of performing services related to their employment. The language used in the first sentence of section 385-a, "current methods for the collection of’ etc., appears to this court to be a clear reference to an inadequate system now in effect for the collection of income due the SUNY Medical Center. The doctors’ private practice income, generally speaking, has not heretofore been income to which the medical center was entitled and, consequently, has never been part of any ongoing system which this legislation was designed to improve. If the Legislature wanted to add doctors’ private fees to the "current methods” for either or both of the reasons espoused by Dr. Mou, it should have so expressed them in the statement of intent, particularly in view of the resulting consequences (Matter of Horchler, 37 AD2d 28, 30, affd 30 NY2d 725). In the absence of clear legislative statement of these objectives, the court declines to read them into the statute (Horchler, supra, p 32).
To accomplish its expressed purpose, the intent of the legislators, as stated first in section 385-a, and then in subsequent sections, was to create a new mechanism, a Clinical Practice Income Management Corporation, which the medical center could establish and require its teaching professionals to become members of, as a condition of employment. The Corporation would then be the responsible organization for the *489 collection of, and the accounting for, "all such income” generated by these doctors. The frame of reference for "all such income” is the first sentence in section 385-a, which uses the language "income generated by teaching professionals * * * in the course of performing services related to their employment.” This language is also found in section 385-e: "The purposes of the corporation shall be to collect * * * all clinical practice income generated by employees of the school engaged in clinical practice in connection with their employment”. This limitation, i.e., services must be employment related, is consistent with the statute’s purpose of improving the collection of and accounting for income to which the center is otherwise entitled. And it would only be income from employment-related services to which the medical center might heretofore have had a right.
The court’s conclusion of limiting the applicability of article 8-AA to employment-related income is supported by all parts of the statute with but one aberration. The definitions of "clinical practice” and "clinical practice income,” seemingly all-inclusive on their face, must, however, be restricted by reference to the other provisions of the statute. As was said by the Court of Appeals in Price v County of Erie (221 NY 260, 266): "Whenever a statute needing construction shows forth a general and dominant purpose, it must be construed with reference to such purpose. The purpose cannot be defeated or thwarted by selecting and isolating sentences of the statute which seem inharmonious with it. A statute must receive such reasonable construction as will, if possible, make all its parts harmonize and render them consistent with its scope and purpose.” Accordingly, the court reads into the definitions of "clinical practice” and "clinical practice income” the requirement that the services rendered be employment related. And as a matter of law, the court further concludes that the teaching professionals’ private practice, and the fees earned therefrom, are generally not to be regarded as related to their employment at Downstate. While defendants contend that this is a factual question which cannot be decided on the instant motion for summary judgment, defendants’ affidavit in this regard contains nothing more than a bald conclusory allegation that the plaintiffs’ private practice may be employment related. Such conclusory affidavit, devoid of evidentiary facts, is insufficient to raise a triable issue of fact (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 342-343).
*490 The court’s conclusions are further mandated by these other rules of statutory construction:
1. Article 8-AA should be given a reasonable construction, it being presumed that a reasonable result was intended by the Legislature (McKinney’s Cons Laws of NY, Book 1, Statutes, § 143). In view of the expressed legislative purpose and intent, the court is unable to accept defendants’ position that the State is now telling a select group of medical doctors, i.e., the teaching professionals at the SUNY Medical Colleges, that their private practice income is to be taken away from them for unexplained reasons. Considering the urgent need for doctors in our society, it is unreasonable to attribute to the Legislature a law, i.e., article 8-AA, which may tend to limit the care and treatment of patients without a strong showing of necessity for so legislating.
2. Article 8-AA should be construed in a manner that would not produce an unjust result (McKinney’s Cons Laws of NY, Book 1, Statutes, § 146). Certainly the defendants’ interpretation of the statute would adversely affect the rights of the plaintiffs and all others similarly situated. Such an unjust consequence should be and is avoided by the court’s construction which, in addition, permits the full effectuation of the primary purpose of article 8-AA (Wilmerding v Bonaschi, 166 Misc 140, 145).
3. The court’s construction of article 8-AA avoids the possibility of the statute being found unconstitutional (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150). The court has serious doubts about the validity of the law if the defendants’ interpretation were to be accepted. Depriving the plaintiffs herein of their fees from private practice could be a taking of their property rights, i.e., their right to continue to earn and retain income from the private practice of medicine, without due process of law. There might also be an equal protection of laws violation in that the teaching professionals at the SUNY Medical Colleges, alone among licensed physicians in the State, would be so affected by the statute. While the equal protection clause in the Fourteenth Amendment to the United States Constitution does not deny the State the power to treat different classes of people in different ways, the classification must be reasonable, not arbitrary, and must rest upon some good ground of its having a fair and substantial relation to the object of the legislation (Reed v Reed, 404 US 71, 75-76).
*491 Without needing to decide these possible constitutional infirmities, the court chooses, and in fact is obliged, to construe article 8-AA so as to avoid such constitutional doubts (People v Lo Cicero, 14 NY2d 374, 378).
Accordingly, plaintiffs’ motion for summary judgment is granted to the extent of the following declaratory relief:
Article 8-AA of the Education Law is applicable to only those services rendered by doctors in connection with their employment as teaching professionals at the SUNY Medical Colleges. This does not encompass, generally, the services rendered by the doctors, and the fees earned therefrom, to patients in their private practice. This limitation, that the services must be given in connection with their employment, is to be read into the definitions of "clinical practice” and "clinical practice income” contained in section 385-b, so that this section will be in harmony with the court’s over-all construction of the statute.
The plaintiffs’ request for a declaratory judgment as to the constitutionality of article 8-AA is denied, this being alternative relief sought by the plaintiffs only in the event that the court would interpret the statute as being applicable to their private practice income. Since the court has not so construed the law, the question is now academic.
The plaintiffs’ request for twofold injunctive relief is also denied. If their request is based on an adverse construction of article 8-AA, the relief is no longer necessary in view of the court’s decision above. Alternatively, if the plaintiffs want to enjoin the defendants from enforcing the statute and requiring them to become members of any corporation that is to be established, even under the favorable interpretation the plaintiffs are urging, they have not established, let alone alleged, any justification for such relief. The plaintiffs have not asserted that the statute, under their interpretation, is unconstitutional or that they would be harmed in any way if it were to be implemented by Downstate.
Before concluding, the court wishes to point out what it is not deciding in this opinion. It is not saying that the Legislature cannot enact a law, although the constitutionality of such a statute would have to be carefully considered, restricting the outside private practice of a teaching doctor at a State medical school to achieve the goals expressed by Dr. Mou. It is just that the court finds that the Legislature has not done so under the guise of article 8-AA.