Billy C. GOSNEY and Mary Lynn Gosney, Plaintiffs,

v.

SONORA INDEPENDENT SCHOOL DISTRICT, a Political Subdivision of the State of Texas, et al., Defendants.

Civ A. No. CA–6–75–20.

United States District Court, N. D. Texas, San Angelo Division.

Feb. 11, 1977.

---

Larry Watts, Houston, Tex., for plaintiffs.

George S. Finley, Smith, Davis, Rose, Finley & Hofmann, San Angelo, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case was heard at San Angelo, Texas on the 29th and 30th days of December, 1976 with all parties and their attorneys in open court. After all parties had presented their evidence to the court and the court had received and considered the pleadings and the briefs of the parties, the court files this memorandum opinion which shall constitute the court's findings of fact and conclusions of law.

The plaintiffs allege a cause of action against the defendant school district, the superintendent of said school district, and four members of the board of trustees of said district in their official capacities as members of said board, pursuant to 42 U.S.C. § 1983, and the First, Fifth, and Fourteenth Amendments to the Constitution of the United States. This court is alleged to have jurisdiction of this case under 28 U.S.C. §§ 1331, 1332, and 1343(3). The amount in controversy allegedly exceeds $10,000.00, exclusive of interest and costs.

Mr. Gosney has previously been employed by the school district as a principal of a junior high school in Sonora, Texas, and Mrs. Gosney has been employed as an elementary teacher in the school system. Their employment commenced in the early 1960s and was terminated at the close of the 1973–74 school year. Each of the plaintiffs had been employed by the terms of several written contracts, each covering one school year, and the contracts had been renewed each year from the time of their first employment down through the 1973–74 school year. Each of these contracts contained, among other things, the following clause:

"Second party (plaintiffs) shall not engage in any other business or profession directly or indirectly, for full-time or for part-time, but shall devote his and her entire working time to the performance of this [sic] duties under this contract."

Each plaintiff had a separate contract for each of the years for which he or she had been so employed.

The board of trustees of the school district voted at their meeting in February of each year as to whether or not contracts for the principals in the system would be re-

newed for another year. On February 11, 1974, the board of trustees voted to rehire Mr. Bill Gosney as a junior high principal, along with other principals in the system.

This same procedure for renewing contracts was followed for teachers except that this vote of the board of trustees was in March of each year and on March 11, 1974, the board of trustees voted, in effect, to renew the contract of Mrs. Gosney. The minutes indicate that the action of the board was to accept the recommendations of the principals in designating the teachers for the ensuing school year rather than expressly stating that the teachers were to be hired or rehired.

It was the further custom, long followed by this school district and in accordance with its practices, that each principal would recommend to the superintendent the teachers he felt should teach another year and the superintendent would in turn make his recommendation to the school board. With only one or two exceptions the recommendations received by the school board were followed and those recommended were rehired for the following year. This was the custom not only for the 1974–75 school year, which is in question in this case, but had been the practice for many years.

The policies of the school board, Pltfs' Ex. 1 at p. 32, contained the following:

"11.4 *Outside Employment*

"A. No teacher in the Sonora Independent School District will accept outside employment during the school year."

In the fall of 1973 Mr. Gosney, in a street conversation with a Mr. Morgan, a partner with one of the school board members in the insurance and real estate business, learned that a dry goods department store in Sonora owned by Mr. Ratliff would probably be for sale. At Mr. Gosney's request, inquiry was made of Mr. Ratliff about the possibility of Mr. and Mrs. Gosney purchasing this department store from Mr. Ratliff. However, the court finds that knowledge of this proposed transaction or the fact that the Gosneys were considering purchasing this store was not made known to the members of the school board or to the superin-

tendent, Mr. McAllister, at any time prior to the February 11, 1974 board meeting. However, in the ensuing weeks this matter became common knowledge in Sonora and word of the prospective purchase by the Gosneys was called to the attention of one or two members of the school board.

In the meantime Mr. McAllister, the school superintendent, had caused to be prepared individual contracts for each principal and teacher in the school system. These contracts were in the process of being signed at the board meeting of May 6, 1974, when one of the school board members learned that the form of contract prepared by Mr. McAllister was different from the contract previously used by the district in that it did not contain the above-quoted paragraph prohibiting a teacher or principal from engaging in any other business or profession, directly or indirectly. The board then instructed Mr. McAllister to re-prepare the contracts on the form that had been in use for many years by the school district and this was done. Also at the May 6, 1974 board meeting there was some discussion about the fact that the Gosneys had purchased the department store in question. An advertisement had appeared in the local Sonora paper on May 2, 1974 announcing the store's purchase and stating that Mr. and Mrs. Gosney would be the "owners and managers." This caused some concern among members of the board. By word of mouth Mr. Gosney learned of their concern and inquired about it from at least one of the board members. In any event, further discussion ensued at a May 13, 1974 board meeting, and the plaintiffs were invited to appear before the board at a third board meeting for that month on May 20, 1974. Mr. Gosney did appear at that time and did give his position with respect to the purchase. He assured the board that his duties as the school principal would not be interfered with by his ownership of the department store and reiterated to the board what he had previously told Mr. McAllister; that is, he would make certain that he would not in any way let his duties to the school system suffer because of this new business acquisition.

At this particular board meeting on May 20, a former board member, at the request of Mr. Gosney, appeared and testified as to Mr. Gosney's competency in his job as a principal. As a matter of fact the record indicates that both plaintiffs were well qualified to perform their duties in the school system and there had been no complaint registered against either of them insofar as their conduct or professional abilities are concerned although some of the board members had received some minor complaints from various patrons of the school district. Who made the complaints and exactly what they were is not clear from the record. In any event, the court finds that the contracts with Mr. and Mrs. Gosney were not renewed because of any lack of competency or improper discharge of their duties and functions as employees of the district.

At the close of the meeting on May 20, and after Mr. Gosney had departed, the board voted favorably upon a motion, duly made and seconded:

"In view of Mr. and Mrs. Gosney's announcement of their growing business interest and envolvement [sic], and the express policy of the board which is stated in the contract under which they are employed, I move that Mr. and Mrs. Gosney's contract not be renewed. I feel that the situation is such that it would be a great handicap to expect complete performance from them under the circumstances."

This motion was carried by a vote of 4 to 3, and the four persons voting affirmatively on the motion not to renew the contracts are the trustees sued as defendants in this suit.

The evidence further showed that Mr. and Mrs. Gosney, in addition to their employment by the school district, are the owners and lessees of some 2,500 to 3,000 acres of land, which they operate and use for ranching purposes. The business in question was purchased for $60,000.00 by a contract signed in June but made effective May 1, 1974, and the business has shown a substantial net profit each year that the Gosneys have owned and operated it.

By request from the plaintiffs, relayed through their attorney (Mr. Morriss), the board afforded the plaintiffs an opportunity for a second hearing, which was finally set for June 24, 1974, at the school administration building. In attendance at this meeting were Mr. and Mrs. Gosney, their attorney, Mr. Adam Morriss, members of the school board, the school board attorney, Mr. Craig Porter, and a reporter. The transcript of this hearing is shown by Pltfs' Ex. 3.

Mr. Gosney testified that he knew prior to the hearing what it was about and the record indicates that he had previously been given a copy of the May 20, 1974 minutes which set forth the reason assigned by the board for not renewing the contracts of the plaintiffs for the next school year.

The attorney for the plaintiffs at the June meeting made a statement, asked questions of the board members, elicited testimony from both Mr. and Mrs. Gosney, and from a Mrs. Sadie Archer. Mrs. Archer was a long-time manager of the department store in question prior to the time that Mr. and Mrs. Gosney purchased it, and she continued in that capacity after they purchased it for a number of months, and is still working there at this time.

The evidence in this case indicates that the plaintiffs and their attorney knew, prior to both the May 20, 1974 and the June 24, 1974 hearings, the purpose of the meetings; that is to consider the renewal of the plaintiffs' contracts; and further knew that the board was concerned that the purchase of the outside business interest by the Gosneys would interfere with their school employment. Mr. Gosney admitted during this trial that at no time was he cut off or prevented at either the June 24th or May 20th meeting from presenting everything he had to present to the board.

The court finds that the only reason that the board of trustees did not renew either of the plaintiffs' contracts for the 1974–75 school year was its concern that the purchase of the business by the Gosneys would

interfere with the discharge of their school duties and the fact that it was in violation of the contracts that would ordinarily have been tendered to plaintiffs in accordance with school policies.

One other sequence of events is important to the resolution of the rights of Mrs. Gosney in this case. One of the alternatives considered by the Gosneys in determining whether or not they should purchase the department store was that Mrs. Gosney would resign and manage the store, but Mr. Gosney would continue his duties as a principal. The fact that this alternative was under consideration was made known to Mr. McAllister and he informed the board of this in the early May 1974 meetings. The board expected her resignation to be submitted and their expectation was based on the representations as to this matter made by Mr. McAllister. However, the plaintiffs did not determine that they would follow this alternative. Instead, they decided that they would purchase the store and both of them would continue their employment with the school district. This became apparent to the board at the time of the May 20, 1974 meeting and it was understood by all parties at that time that it was the plaintiffs' position that they desired to retain their positions in the school district and at the same time own the store and operate it during school hours through employed personnel.

■ At the termination of the June 24, 1974 meeting, and after the board went into an executive session, the board authorized their attorney, Mr. Porter, to convey to plaintiffs through their attorney that the board would renew Mrs. Gosney's contract. This was based upon the reasoning that several married women were working for the school system while their husbands operated separate businesses and they did not feel they should hold Mrs. Gosney to any different standard. Mr. Porter conveyed this decision to the attorney for the plaintiffs and he at that time, or shortly thereafter, informed Mr. Porter that she would not accept reemployment. There is a conflict as to whether or not the plaintiffs'

attorney understood, that if Mrs. Gosney accepted the renewal of her contract, Mr. Gosney would be required to drop all claims against the school district. The school board members who testified and Mr. Porter were very definite and explicit in testifying that their were no strings or conditions attached to the offer but merely that they felt she should be offered a renewal contract. The court accepts this version because of the plaintiffs' attorney's explanation at the trial that he had been very busy on the day in question and had gone home to take a nap and apparently had been awakened from this nap when the phone call from Mr. Porter came. Due to his indefinite recollection of what precisely happened, the court feels that Mr. Porter's testimony is correct: Mrs. Gosney was offered a renewal contract through her attorney for the 1974–75 school year, she declined it, and her refusal was made known to the board through the respective attorneys. For this reason alone the defendants should prevail against the claims of Mary Lynn Gosney and any relief she seeks should be and will be denied.

■ The court is cognizant and realizes that the Sonora Independent School District and its Board of Trustees are not "persons" within the meaning of 42 U.S.C. § 1983. See, City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Campbell v. Gadsden County District School Board, 534 F.2d 650, 655 n. 10 (5th Cir. 1976); Sterzing v. Fort Bend Independent School District, 496 F.2d 92, 93 n. 2 (5th Cir. 1974). Also, Campbell teaches that § 1983 is unavailable against the individual school board members sued, as here, in an official capacity for money damages. Yet, § 1983 is available to decide plaintiffs' claim for reinstatement against the board members. Campbell, supra, at 655 n. 10. 28 U.S.C. § 1331 gives this court jurisdiction over the school district in regard to the backpay and attorney's fee claims as the amount in controversy is greater than $10,000.00, exclusive of interest and costs. Stapp v. Avoyelles Parish School Board, 545 F.2d 527 (5th Cir., 1977), Cf. City of Kenosha v.

*Bruno, supra,* 412 U.S. at 514, 93 S.Ct. 2222; *Campbell v. Gadsden County District School Board, supra,* 534 F.2d at 653 n. 7. The court finds it unnecessary to determine, therefore, whether § 1343(3) jurisdiction exists *ex proprio vigore* of the Fourteenth Amendment. *See, Campbell v. Gadsden County District School Board, supra,* 534 F.2d at 653 n. 5.

It appears to the court that the following questions must be resolved in order to determine the rights of the parties in this case, and this will include the rights of both Mrs. Gosney and Mr. Gosney although the rejection by Mrs. Gosney of an unconditional offer to give her a contract for the year is an absolute defense in favor of the defendants:

■ 1. Under these facts, do the plaintiffs have more than a unilateral expectation of reemployment and thereby have a "property" interest which has been denied them or which they have been deprived by the defendants? *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The vote of the school board in granting a one-year's contract for 1974–75 to the plaintiffs created a "property interest." That is, given the school board's past course of conduct in never terminating an employee after this vote, plaintiffs could reasonably rely on their reemployment. *See, Stapp v. Avoyelles, supra,* 545 F.2d at p. 532.

■ 2. Given such a property interest, were the plaintiffs afforded procedural due process? The answer to this should be in the affirmative. They were given not one but two hearings. They were afforded every opportunity to appear before the board and give their side of the case with an attorney, and they had previous notice of the problem or charges against them which prevented a renewal of their contracts. These hearings were conducted impartially and in a fair manner after due notice. None of the board members or the board collectively or the superintendent of schools acted in any unfair or capricious or arbi-

trary manner. *See, Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir. 1970).

■ 3. Does the district rule and the clause in the contract whereby teachers and principals shall not engage in any other business either directly or indirectly violate the plaintiffs' rights to substantive due process, or does this rule and this clause come within the rational test for school districts? The court should be reluctant to invade the functions of the school board in this respect. This court feels that it is a rational and necessary and proper rule and that the board properly exercised their judgment. Therefore, the rule (11.4 of P.Ex. 1) and the contracts in question do not deny substantive due process to either of the plaintiffs. *See, Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Chamberlain v. Wichita Falls Independent School District,* 539 F.2d 566, 571–72 (5th Cir. 1976); *Duke v. North Texas State University,* 469 F.2d 829, 838 (5th Cir. 1973); *Ferguson v. Thomas, supra,* at 859.

■ The rule is not, as the plaintiffs claim, arbitrary in its application. The plaintiffs presented evidence of other teachers that "moonlighted": several teachers ran or helped run ranches; one takes tickets at a drive-in show; one kept books for a doctor; and one translated certificates into Spanish from English. None of these outside jobs approximate the responsibilities or tasks imposed upon plaintiffs when they purchased the store. The fact remains, however, that the rule was applied to plaintiffs only. Yet, this uncertain enforcement was not designed to conceal "the true intent behind the rule of suppressing a protected liberty." Griffis and Wilson, *Constitutional Rights and Remedies in the Non-Renewal of a Public School Teacher's Employment Contract,* 25 Baylor L.Rev. 549, 557, citing *Lewis v. Spencer,* 468 F.2d 553, 557–558 (5th Cir. 1972). The school board apparently felt that the rule was infringed only when substantial outside involvement was present, as it was here. This application on their part does not thus violate plaintiffs' substantive due process.

■ Plaintiffs argue, though, that a protected liberty does exist. This liberty is said to arise from the "penumbra" of rights guaranteed in the First, Third, Fourth, Fifth, and Ninth Amendments. This court has not been cited any case which holds that one has a constitutional right to be engaged in private employment while employed as a school teacher. This court does thus not find a protected right here rising to the level of sexual privacy as in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), or family privacy as in *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).

■ Plaintiffs additionally cite independent violations of the First and Fifth Amendments. Just as no protected right emanates from the First Amendment together with other Amendments, so no right is derived from the Amendment alone. If citation of the Fifth Amendment is meant by plaintiffs to imply that there was a "taking," no such event occurred. Even if this rule prohibiting outside employment can be likened to a regulation impairing use or value of private property, no "taking" occurs. Rather, as in *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), this rule is a reasonable measure enacted pursuant to the power of the school administration to write rules and regulations. *See, Esteban v. Central Missouri State College*, 415 F.2d 1077, 1089–90 (8th Cir. 1969), *cert. denied*, 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970) (a college has the inherent power to promulgate rules and regulations). Therefore, no violation of the First and Fifth Amendments arises from these facts.

■ 4. Finally, were plaintiffs denied equal protection under the law by the policy of the school district? This court holds that they were not. As teachers the plaintiffs do not enjoy the status of a "suspect" classification. *See, e. g., Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race). Thus, the less stringent "rational basis" test is to be applied to the

school board's policy. *See*, e. g., *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). As has been noted above, this policy is reasonably related to a legitimate state interest. That is, the state has an interest in well-run schools for its children and it is reasonable to assume that preventing teachers and principals from having substantial outside interests furthers that interest. No denial of equal protection arises from these facts.

■ 5. Did substantial evidence before the school board support its action? *Stapp v. Avoyelles, supra,* 545 F.2d at p. 533.

Upon review of the record of the hearings given plaintiffs on May 20, 1974 and June 24, 1974, the court concludes that substantial evidence supports the board's action. The record reveals that the Gosneys were aware of the contract's clause prohibiting outside employment, that the investment in the store was substantial, that the store was operated during school hours, and that Mr. Gosney's duties as principal were substantial. Given these facts the board could sufficiently conclude that the purchase of this store would warrant dismissal.

■ 6. While the question of breach of contracts under state law was alleged to be before the court (Pre-Trial Order, Plaintiffs' Issues of Law Nos. 5 and 6), the focus of the evidence was not on this particular question. However the court finds that there was no "meeting of the minds" between the plaintiffs and the defendants and therefore no contract was every consummated or entered into and consequently plaintiffs cannot recover against the defendants for any breach of contract. Defendants did vote to tender a contract to plaintiffs which contained a clause prohibiting outside employment. This contract was never executed, and the court finds that the plaintiffs never did accept or agree to the terms of any contract that did contain such a clause. In fact, the evidence shows and the court finds that the plaintiffs rejected any offer from defendants for a contract with such a clause therein.

7. As noted in the first page of this opinion, plaintiffs' motion to amend their complaint and the Pre-Trial Order has, in effect, been granted in part and denied in part. This court, as it did at the trial, allows plaintiffs to allege an additional basis of jurisdiction, viz., 28 U.S.C. § 1343(3). Defendants will not be prejudiced here as plaintiffs have at all times rested jurisdiction under 42 U.S.C. § 1983. Of course, § 1343(3) has always been the basis for a § 1983 suit.

■ However, plaintiffs' motion to amend to also sue the trustees in their individual capacity is denied. While the trial of this case concluded on December 30, 1976, plaintiffs have not raised this point until their motion to amend was filed, January 24, 1977. Not only is this allegation raised very late in the day, but the prejudice to defendants, being a function of time, has increased proportionately. The individual school board members' lack of notice of this allegation at the trial prejudiced their ability to defend possible damage claims. Given this prejudice and plaintiffs' failure to explain why this amendment was sought so late, compels this court to deny the amendment.

Although the Sonora Independent School District has not adopted the Continuing Contract Law of the State of Texas, Texas Education Code §§ 13.101, et seq., a "property" right does arise from these facts. It does not appear that the plaintiffs were denied any employment in teaching positions with other school districts nor does the evidence establish that plaintiffs were deprived of any of their rights afforded by Fourteenth Amendment protection to either their "liberty" or their property as required by *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

As the plaintiffs were afforded hearings that complied with Procedural Due Process and it further appearing that no constitutional rights were denied plaintiffs by reason of the school's rule concerning outside employment or its application, a judgment will be entered denying all relief to plaintiffs.