■ SAMUEL L. KOUNTZ et al., Respondents, v STATE UNIVERSITY OF NEW YORK et al., Appellants.—In an action, *inter alia,* to declare that the provisions of article 8-AA of the Education Law do not apply to plaintiffs' practice of medicine, defendants appeal from so much of a judgment of the Supreme Court, Kings County, entered February 9, 1977, as granted the plaintiffs' motion for summary judgment to the extent of declaring that article 8-AA does not apply to services rendered to patients by teaching professionals in their private practices. Judgment reversed insofar as appealed from, on the law, without costs or disbursements, and motion for summary judgment denied. From July 14, 1972 to May 31, 1973 salary negotiations were held between the executive branch of the State of New York and the representatives of the medical and dental faculty of the State University of New York (SUNY). On the latter date a final agreement was reached, subject to ratification by the medical and dental faculty. The agreement was executed upon such ratification on January 3, 1974. The agreement provides that the "State shall prepare, secure introduction and recommend passage by the Legislature of appropriate legislation to authorize a nonprofit corporation in each medical or dental school at SUNY Health Sciences Centers or Medical Centers relating to clinical practice which results in a fee for professional services." The "Plan for Management of Clinical Practice", which was appended to the agreement, states that "Clinical practice shall mean the act of providing all forms of medical and health care including patient consultations, and the act of performing clinical investigation involving patients, for which acts a fee for professional service is customarily charged." It defines clinical practice income as "the income resulting from fees for professional services which services are rendered in connection with clinical practice." The plan provides that the income so received by the nonprofit corporation, after deduction of stated items, is to be paid to the teaching professional who had engendered such income "up to an amount not to exceed 75% of 'actual' salary" paid by SUNY. These provisions replaced a 1959 resolution of SUNY's Board of Trustees which had limited the private medical practice income of teaching professionals to 50% of their State salaries. Apparently, there had been no particular policing of the 1959 resolution, and it did not provide for disposition of private fee income in excess of the stated ceiling. Article 8-AA of the Education Law (§§ 385-a to 385-i) was enacted in 1973 (L 1973, ch 382, § 8), apparently in implementation of this agreement, and in accordance with the State's promise to "prepare, secure introduction and recommend passage by the Legislature of appropriate legislation". Section 385-b defines clinical practice and clinical practice income in accordance with the agreement. Thus, clinical practice income is stated to be "all income resulting from fees charged for professional services rendered in connection with clinical practice" (with stated exceptions) and clinical practice is stated to be "the act of providing any form of medical and health care * * * for which acts a fee for professional services is customarily charged." However, plaintiffs seek a declaration that article 8-AA of the Education Law is not applicable to fees earned by teaching professionals in their private practices. They point to section 385-a of the Education Law, entitled "Statement of legislative intent", which provides: "It is the sense of the legislature that the current

methods for the collection of, and accounting for, income generated by teaching professionals employed in a medical or dental school at a state university of New York medical center or health science center in the course of performing services related to their employment are inadequate and fail to serve properly the needs of the medical and dental schools, the state university system or the people of the state of New York. The purpose of this article is to provide a mechanism for the collection, management and ultimate disbursement, including disbursements for the purpose of making salary adjustments, of all such income and pursuant to which proper accounting and auditing measures may be implemented, and such purpose is hereby declared to be a public purpose, essential to the public interest." Special Term found, from the statement of legislative intent, that the Legislature was concerned only with "income generated by teaching professionals * * * in the course of performing services related to their employment". Special Term therefore limited the meaning of "clinical practice income" to "income from employment-related services to which the medical center might heretofore have had a right"; and held that income from the private practice of medicine was excluded. Special Term categorized the "seemingly all-inclusive" definition of clinical practice and clinical practice income, as contained in section 385-b, as an "aberration". In view of the possible contradiction between sections 385-a and 385-b (despite the apparent intent by the State to implement the collective bargaining agreement which envisioned the "all-inclusive" interpretation), a trial is necessary, at which the parties may present evidence, *inter alia,* of the intent of article 8-AA of the Education Law; the matters that it sought to correct or revise; and, to the extent that it may appear to be relevant, the relationship between the care of private patients by faculty professionals employed by SUNY and the performance by them of services related to their employment. Latham, J. P., Damiani, Cohalan and Hawkins, JJ., concur. [89 Misc 2d 483.]