RETIRED PUBLIC EMPLOYEES' ASSOCIATION OF CALIFORNIA, CHAPTER 22; Oakland Retired Employees' Association; and Mrs. Winofred White, Plaintiffs,

v.

STATE OF CALIFORNIA; State Personnel Board of the State of California; Board of Administration of the Public Employees Retirement System; Retirement Board of the Oakland Municipal Employees' Retirement System; City of Oakland, Defendants.

Jacob B. GUNN, on behalf of himself and all other persons similarly situated, Plaintiff,

v.

STATE OF CALIFORNIA; Board of Administration of the Public Employees' Retirement System; Carl J. Blechinger, Executive Officer of the Public Employees' Retirement System; Kenneth C. Cory, Controller of the State of California, Defendants.

Nos. C–77–2008 WHO, C–78–2070 WHO.

United States District Court, N.D. California.

Nov. 13, 1984.

Philip Paul Bowe, Davis, Cowell & Bowe, San Francisco, Cal., for plaintiffs.

Bernard L. Allamano, Philip E. Callis, California State Employees' Ass'n, Oakland, Cal., for plaintiff Gunn.

Jeffrey N. Haney, Oakland, Cal., Richard L. Mayers, Deputy Atty. Gen., San Francisco, Cal., for defendants.

OPINION

ORRICK, District Judge.

In *Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court held that payment of benefits to retired public employees in amounts that vary according to the sex of the retiree constitutes impermissible sex discrimination prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The question in these cases [1] presented to the Court by cross-motions for summary judgment in the *Retired Public Employees'* case and by plaintiff's motion for summary judgment in the *Gunn* case is whether the State of California through its Public Employees Retirement System ("PERS") can lawfully continue this payment procedure proscribed by the Supreme Court in 1978.

This question, answered in the negative by Judge Ingram of this Court,[2] and affirmed by the United States Court of Appeals for the Ninth Circuit, *Retired Public*

[1] In September 1977, plaintiff Retired Public Employees Association of California, Chapter 22, and others filed this class action suit (No. C–77–2008 WHO) to challenge the use of actuarial tables that relied upon the sex of the recipient as a basis for determining monthly benefit payments (the "1977 complaint"). A similar case was filed in September 1978 by Jacob B. Gunn, a retired State of California employee (No. C–78–2070 WHO). The cases were assigned to Judge Ingram, and were consolidated in 1979.

Plaintiffs' motion for summary judgment is joined by all plaintiffs. However, named plaintiff Gunn does not join in the plaintiffs' motion regarding the third claim for relief based upon § 21251.13 of the California Government Code, a claim that was not stated in the complaint he filed.

Defendants' motion for summary judgment is brought by the State defendants. The "State defendants" include the State of California, the Personnel Board of the State of California, the Board of Administration of the Public Employees Retirement System ("PERS"), a PERS executive officer, and the Controller of the State of California.

Also named as defendants in the 1977 complaint are the City of Oakland and the Retirement Board of the Oakland Municipal Employees Retirement System. The Oakland retirement plan is the subject of plaintiffs' second claim for relief, a claim that is not now before this Court.

[2] Considering cross-motions for summary judgment, Judge Ingram found that the State defendants' practice of paying monthly retirement benefits according to sex-based actuarial tables violated Title VII under *Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). He certified a plaintiff class consisting of all persons retired prior to January 1, 1977, who were receiving lower monthly retirement benefits than a similarly-situated member of the opposite sex. On April 25, 1980, the Court ordered the State defendants to raise class benefits to the level received by the opposite sex without reducing any benefits, and ordered the adjustment retroactively to the date of the *Manhart* decision.

*Employees' Ass'n of California v. State of California,* 677 F.2d 733 (9th Cir.1982),[3] *vacated,* 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), is again posed to this Court for review in light of the Supreme Court's decision in *Arizona Governing Committee for Tax Deferred Annuity & Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983).[4] For the reasons that follow, this Court again answers this question in the negative and orders relief to the certified class of those who have been discriminated against since April 25, 1978, the date of the *Manhart* decision.

### I

Before the Court considers the important issues as to the appropriateness of monetary relief to the class retroactive to the date of *Manhart,* involving the adjustment of past benefits, and an injunction regarding future benefit payments, it must first examine the Supreme Court's holdings in *Manhart* and *Norris.*

### A

*Manhart* involved a municipal agency's retirement plan that required females to contribute more than similarly-situated males because mortality tables indicated that women live longer. *Manhart, supra,* 435 U.S. at 705, 98 S.Ct. at 1373. The plan was employer-operated and involved no private insurance companies. The plan was funded by employee contributions, employer contributions, and investment income earned on these contributions. Monthly retirement benefits were calculated as a fraction of the employee's final salary multiplied by years of service. A plaintiff class of female employees brought a Title VII action seeking an injunction and restitution of excess contributions.

Writing for the Court majority, Justice Stevens acknowledged that women, as a class, do live longer than men. *Id.* at 707, 98 S.Ct. at 1374. But, stressing that Title VII's focus was on fairness to *individuals,* the Court held that an employment practice requiring unequal contributions from women simply because of their sex "is in direct conflict with both the language and the policy of the Act." *Id.* at 711, 98 S.Ct. at 1377.

The Court did not disturb a preliminary injunction issued by the district court. *See id.* at 706 n. 9, 98 S.Ct. at 1374 n. 9. However, the Court vacated the district court's order refunding excess contributions made by the class for two reasons. First, before the decision, pension plan administrators could reasonably have thought that the use of valid actuarial tables was lawful. There was no reason to believe that the threat of a retroactive damage award was necessary to cause pension administrators to conform their plans to the decision. *Id.* at 719–21, 98 S.Ct. at 1380–82. Second, drastic changes in the legal rules governing pension plans should not be applied retroactively, because the occurence of such major unforeseen contingencies jeopardizes pension fund solvency and threatens the rights of all fund members. *Id.* at 721–23, 98 S.Ct. at 1382–83.

### B

The Supreme Court's *Norris* decision involved a deferred compensation plan of-

---

**3.** The Ninth Circuit upheld the district court's finding of liability. The panel also affirmed the relief ordered by the district court, but modified the order so as to award relief to those class members retiring after March 24, 1972, the date Title VII became applicable to governmental employees. This is the effective date of the Equal Opportunity Act of 1972, which amended 42 U.S.C. § 2000e(a) by expanding the definition of "person" to include governments, governmental agencies, and political subdivisions.

**4.** On July 6, 1983, the Supreme Court granted *certiorari,* vacated the judgment of the Ninth Circuit, and remanded the case to that court for further consideration in light of the *Arizona Governing Committee for Tax Deferred Annuity & Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 3565, 77 L.Ed.2d 1236 (1983). Thereafter, the Ninth Circuit vacated the district court's prior judgment and remanded the case. *Retired Public Employees' Ass'n of California v. State of California,* 714 F.2d 95 (9th Cir.1983). On March 8, 1984, the case was reassigned to this Court.

fered by the State of Arizona but administered by private third-party insurers. An employee's contributions and the investment income thereon funded an employee's retirement benefits without any additional contributions from any source. *Norris, supra,* 103 S.Ct. at 3503 (Marshall, J., dissenting). The private insurance companies discriminated against women by paying males larger monthly benefits than women who deferred the same amount of income, because women as a class live longer.

The *Norris* district court granted summary judgment to a plaintiff class, ordering the state to cease using sex-based actuarial tables and to equalize benefit payments made after the date of the district court's judgment. *Id.* at 3495, 3503. Although seemingly prospective, the relief equalizing benefits was retroactive because of the type of plan involved in *Norris.* Benefit payments represented a return on an employee's contributions. In order to raise a retired employee's benefits, the state would be required to retroactively fund the deficiency in past contributions. *Id.* at 3509–10 n. 10.

The Supreme Court majority in *Norris* reaffirmed the *Manhart* liability holding, stating that *"Manhart* squarely rejected the notion that, because women as a class live longer than men, an employer may adopt a retirement plan that treats every individual woman less favorably than every individual man." *Norris, supra,* 103 S.Ct. at 3498 (Marshall, J., concurring in the judgment in part). Speaking for the Court on retroactivity, Justice Powell declined to make the holding retroactive for two reasons. First, the employer in *Norris* reasonably could have assumed that the use of private third-party insurers brought the plan out from under the *Manhart* shadow of illegality. *Id.* at 3510. Second, imposing such an unanticipated financial burden would have a devastating result on all employer-sponsored plans.

The *Norris* Court, therefore, modified that part of the district court's order relating to equalization of future benefits. Because the *Norris* benefits depended upon the amount of an employee's contributions, the Court held that only benefits derived from contributions collected after the effective date of the judgment need be calculated without regard to the sex of the employee. *Id.* at 3510 n. 12 (Powell, J., concurring in part).

The Court must apply these rulings to the case at bar.

## II

■ PERS provides pension and retirement benefits to State of California employees and to contracting city, county, and other local government employees. The plan is operated solely by the State without involvement of third-party insurance companies. The plan is funded from three sources. The first is employee contributions that are based on a percentage of an employee's salary. The salary percentage does not reflect the amount of money needed to fund a particular individual's benefits. Rather, the contribution percentage reflects the overall needs of the contributions, also pegged to a percentage of salary. The second source of funding is employer contributions, also pegged to a percentage of salary. The third source is investment income earned by PERS.

The benefits paid to an employee under the plan do not depend on the employee's contributions. They depend on an employee's years of service and final compensation, varied with respect to age at retirement. Thus, the plan does not simply refund specific contributions made for a specific employee.

In contrast to the equal amounts that similarly-situated males and females contribute, PERS benefit payments vary according to the sex of the recipient. Because women, as a group, live longer than men, a woman retiring after age sixty will receive lower monthly benefits than a similarly-situated man. A man retiring prior to age sixty likewise will receive lower monthly benefits than a similarly-situated woman because of a sex-based actuarial assumption. Plaintiffs contend, and the district court found in the *Retired Public*

*Employees'* case, that this practice constitutes impermissible sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

The State abandoned its use of sex-based actuarial tables to calculate monthly benefits for PERS members who retired on or after January 1, 1977. Cal.Gov't Code § 21251.13, which contained the sex-based tables applied to "miscellaneous" PERS members, was amended in 1976 to provide gender-equalized benefit payments to all members who retired after January 1, 1977.[5] The amendment did not change monthly benefits for those members who retired prior to that date. Such members continue to receive different benefits depending on their sex.

On appeal the State continued to assert the legality of its gender-based benefit payments. The State now offers no argument on this issue. Plaintiffs argue that an employer-operated retirement plan that pays individual retirees different benefits based solely on sex clearly violates Title VII under *Manhart.*

Title VII forbids discrimination against any individual with respect to his "compensation, terms, conditions, or privileges of employment" because of such individual's sex. 42 U.S.C. § 2000e–2(a)(1). The *Manhart* decision applied the statute to a retirement plan very similar to the plan before the Court. The main difference between the *Manhart* plan and the one here was that in *Manhart* females were required to *contribute* more than a similarly-situated male in order to receive the same amount of benefits. The Court noted that *Manhart* was the first case asserting a Title VII challenge to valid actuarial tables. *Manhart, supra,* 435 U.S. at 722, 98 S.Ct. at 1382. Despite the validity of the tables, the Court held that requiring a woman to contribute more than her male counterpart constituted impermissible discrimination,

stating that "Congress has decided that classifications based on sex, like those based on national origin or race, are unlawful." *Id.* at 709, 98 S.Ct. at 1375. In *Norris,* the Supreme Court reaffirmed the *Manhart* liability holding, stating that "the classification of employees on the basis of sex is no more permissible at the pay-out stage of a retirement plan than at the pay-in stage." *Norris, supra,* 103 S.Ct. at 3497.

It is undisputed that PERS pays monthly benefits based on sex-segregated actuarial tables to a class of pre-1977 retirees. This benefit calculation method violates Title VII. The Court, therefore, reinstates the prior order certifying a plaintiff class consisting of those members of PERS currently receiving lower monthly benefit payments than a similarly-situated member of the opposite sex, and who retired on or after March 24, 1972 (the date Title VII became applicable to public employees), and before January 1, 1977 (the date that the State abandoned the use of sex-based actuarial tables).

Under 42 U.S.C. § 2000e–5(g), this class is entitled to an injunction prohibiting the State defendants from using the sex-based actuarial tables to calculate monthly benefit payments made to the class. The class is also entitled to other affirmative action and equitable relief "as the court deems appropriate."

## III

The Court now turns to the question of whether the relief awarded may be retroactive. In *Norris,* the Supreme Court majority declined to award relief that was retroactive in nature. *See Norris, supra,* 103 S.Ct. at 3510 (Powell, J., concurring). As mentioned above, this Court's prior order directed defendants to raise the benefit levels of disadvantaged plaintiffs retroactively

---

5. *See* 1976 Cal.Stats. ch. 1436. A "miscellaneous" PERS member is a member who is an employee of a contracting agency, except a safety or school worker. *See* Cal.Gov't Code § 20018 (West 1980).

Although the parties acknowledge that other sex-based actuarial tables exist, their whereabouts was not brought to the attention of the Court.

to April 25, 1978, the date of the *Manhart* decision. Plaintiffs contend that, despite *Norris*, the Court should order the same relief previously awarded and affirmed because (1) injunctive relief adjusting future benefit payments is wholly prospective; (2) the *Norris* limits on retroactive relief are inapplicable because no new principle of law was announced in *Norris* that would affect this litigation; and (3) the State should have known, as of the date of *Manhart*, that its benefit payment methods were illegal.

The State's principal argument is that the right to be free from discrimination vests at the time of contribution to the plan. All plaintiffs' contributions were made prior to the *Manhart* and *Norris* decisions, so the State argues that plaintiffs have no right to equalized benefits. Adopting this argument would mean that plaintiffs must go without *any* relief, be it prospective or retroactive.

The State's retroactivity argument starts with the premise that "retroactive damages" here means "an increase in future retirement benefits" for those who retired prior to *Norris*. The State then argues that *Norris* flatly prohibits retroactive relief imposed under Title VII against any pension plan. As of January 1, 1977, the State stopped using its sex-based tables to calculate monthly benefits. Because that date predates both *Manhart* and *Norris*, the State contends that this Court should not order equalization of future benefits.[6]

### A

■ The Court first considers whether plaintiffs must go without any relief because their contributions to PERS were made before the *Manhart* decision. Extrapolating from the emphasis placed on contributions in *Manhart* and *Norris*, the

State argues that *Norris* created a "cut-off date" such that only retirement benefits based on post-*Norris* contributions need be distributed without reference to sex.[7] This argument, previously rejected by the Ninth Circuit, *Retired Public Employees', supra,* 677 F.2d at 736, reflects a basic misunderstanding of the two decisions. The Supreme Court in *Norris* also rejects it.

The *Norris* Court's emphasis on the timing of contributions cannot be construed, as urged by the State, to operate as a complete bar to relief. In *Norris*, the timing of plan contributions was very important because the benefit payments *depended* upon the *amount* an employee contributed. An upward adjustment of post-judgment benefits was inequitable because the prejudgment contributions could not support such adjustment.[8] Hence the Supreme Court declared that only benefits based on post-judgment contributions needed to be equalized. *Norris, supra,* 103 S.Ct. at 3512 (O'Connor, J., concurring).

Likewise, the timing of contributions was very important in *Manhart* because there the contributions themselves were discriminatory. *Manhart, supra,* 435 U.S. at 705, 98 S.Ct. at 1373. A retroactive refund of the *Manhart* plaintiffs' unequal contributions was inequitable because, until the decision, pension plan administrators reasonably could have assumed that contributions based on the actuarial tables were lawful.

The fact that the Supreme Court emphasized the timing of contributions in its two decisions does not lead to the conclusion that a pension plan member only has Title VII rights at the time the person contributes to a pension fund. Plaintiffs' contributions were equal, but the State's benefit payments are discriminatory. The Court, therefore, finds that plaintiffs are entitled

---

**6.** The State also argues that rights to pension benefits vest at retirement and cannot be diminished. This misses the mark because plaintiffs' benefits stand to be enhanced, not diminished, by this litigation.

**7.** This argument is inconsistent with the State's position on retroactivity, because it implies ap-

proval of relief retroactive to July 6, 1983, the date *Norris* was decided.

**8.** The Supreme Court's reasoning is more fully explored in connection with retroactivity, discussed *infra.*

to an injunction and appropriate affirmative relief.

## B

■ The Court next considers whether retroactive relief is completely barred in this case. Title 42 U.S.C. § 2000e–5(g) states that the Court may enjoin the defendant from engaging in the unlawful employment practices, "and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay * * * or any other equitable relief as the court deems appropriate."

The *Norris* decision does not completely bar retroactive relief against retirement plans violating Title VII. Rather, the Court set out reasons why retroactive relief was not "appropriate" in that case. Writing for the five-person majority on this issue, Justice Powell plainly identifies two considerations for a retroactive Title VII award against a pension fund: (1) could the employer have reasonably assumed that the plan's operation was lawful; and (2) would the imposition of an unanticipated financial burden jeopardize the operation of the fund. *Norris, supra,* 103 S.Ct. at 3510. Justice Powell found that the *Norris* employer was reasonable in the assumption of the plan's legality, and that holding an employer liable retroactively despite his reasonableness would have the devastating result of bankrupting apparently legal pension plans. Justice Powell, therefore, concluded that liability should be prospective only. *Id.* Other courts faced with the issue have not found *Norris* a complete bar to retroactive relief. *See Spirt v. Teachers Insurance & Annuity Ass'n,* 735 F.2d 23 (2d Cir.1984); *EEOC v. Wooster Brush Co. Employees Relief Ass'n,* 727 F.2d 566, 575–76 (6th Cir.1984); *cf. Colonial Penn Insurance Co. v. Heckler,* 721 F.2d 431, 441 (3d Cir.1983) (limited time period and advance knowledge of regulations justified retroactivity under *Norris*); *AFSCME v. State of Washington,* 578 F.Supp. 846, 856 (W.D. Wash.1983) (cost is relevant in determining

propriety of back-pay award under rationale of *Manhart* and *Norris*).

Therefore, the Court must scrutinize the contemplated relief and apply the *Norris* considerations to relief against PERS that is retroactive in nature. An injunction ordering defendants to increase future benefit payments from judgment forward possibly could be retroactive in nature, as was the case in *Norris.* Here, it is not.

The *Norris* Court noted that equalized future annuity payments constituted retroactive relief because of the type of plan involved therein. *Norris, supra,* 103 S.Ct. at 3503. Under the *Norris* plan, an employee's monthly benefits depended upon the amount of compensation that the employee deferred and any earnings thereon. *Id.* at 3495, 3509–10 n. 10. In order to raise the plaintiffs' future benefits, the State would have been required to retroactively fund the deficiency in past contributions. *Id.* at 3509–10 n. 10. Thus, the district court's "future conduct" injunction in reality ordered defendants to remedy acts that had taken place before the plan's illegality was known.

In contrast, the PERS benefits do not depend on the amount of an employee's past contributions. Benefits depend on years of service and final salary, age at retirement, and sex. No segregated accounts are maintained for each employee. An employee could conceivably spend years in one job, advance just prior to retirement, and collect higher monthly benefits based on his or her higher salary at retirement. Where benefit payments do not depend on the specific amount of an employee's past contributions, an injunction affecting that employee's future monthly benefits cannot be considered retroactive relief. The relief requires no adjustments to contributions made prior to *Manhart* because the benefit payments do not depend on the specific amounts each employee has contributed. The Court finds that an injunction ordering defendants to equalize future PERS benefit payments is not precluded by *Norris* because it is wholly prospective relief. Accordingly, the Court orders the State de-

fendants to equalize all benefit payments to the plaintiff class from the date of judgment forward by raising benefit payments of disadvantaged plaintiffs to those enjoyed by a similarly-situated member of the opposite sex, without reducing any benefits to any PERS member.

### C

■ The Court now considers whether the award of equalized benefits retroactive to the date of the *Manhart* decision is "appropriate" under 42 U.S.C. § 2000e-5(g). *See Manhart, supra,* 435 U.S. at 719, 98 S.Ct. at 1380 (stressing that retroactive relief must be appropriate).

The *Manhart* case condemned the use of sex-based actuarial assumptions in the operation of an employee retirement plan. The State has acknowledged this point in its briefs. Closing Brief at 12. The plan in *Manhart* was employer-operated, as is the PERS plan. The *Manhart* plan discriminated in its contribution requirements, whereas the PERS plan discriminates in benefit payments. Nevertheless, *Manhart* clearly established the principle that the use of sex-based actuarial tables in the operation of a pension plan violates Title VII. *See Norris, supra,* 103 S.Ct. at 3497 n. 9, and cases cited therein.

As to employer-operated pension plans like PERS, *Norris* established no new principle of law. *Id.* 3512 (O'Connor, J., concurring) ("Ultimately, I find this case controlled by the same principles of Title VII articulated by the Court in *Manhart*"). *Norris* did establish a new principle of law for pension plans involving third-party insurers, as the *Norris* plan did. This fact militated against retroactive relief in *Norris*, but it is inapplicable here. After *Manhart*, the State could not reasonably have assumed that sex-based PERS benefit payments were lawful, so retroactive relief would not be inequitable on this score. *See Colonial Penn Insurance Co. v. Heckler,*

721 F.2d 431, 441 (3d Cir.1983) (knowledge of change in regulations weighed in favor of retroactive relief under *Manhart*).

A retroactive award of sex-equalized pension benefits must not impose an unanticipated financial burden that might jeopardize the pension fund. *Norris, supra,* 103 S.Ct. at 3510; *see id.* at 3512 (O'Connor, J., concurring); *cf. Spirt, supra,* 735 F.2d at 26 (in a case involving third-party insurers, retroactivity inequitable if it imposes heavy financial burden on employers in light of new principle of law). The Court first notes that Justice Powell's nonretroactivity holding applies to the employer-*sponsored* type of plan there at issue, as opposed to the employer-*operated* type of plan addressed in *Manhart*. *Norris, supra,* 103 S.Ct. at 3510. Justice Powell could not justify retroactive relief, "particularly in view of the [third-party insurer] question left open in *Manhart.*" *Id.* This consideration is not present here, so equalizing benefits after the date of *Manhart* will not impose an "unanticipated" financial burden. *See Retired Public Employees, supra,* 677 F.2d at 738 ("in view of *Manhart,* the award [of increased benefits] should have been foreseen and taken into account by administrators, thus lessening the financial impact on the pension plan"), *vacated,* 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983).

The uncontroverted evidence in the record shows that cost burdens are not prohibitive here. *Cf. AFSCME, supra,* 578 F.Supp. at 856 (cost is relevant in determining propriety of back-pay award under *Manhart* and *Norris* rationale). The PERS plan is a defined benefit plan[9] in which resources may be reallocated between men and women, using existing reserves, without jeopardizing the fund or lowering benefits to any group. *See Norris, supra,* 103 S.Ct. at 3510 n. 10. The parties do not contend that the PERS plan would require "topping up" by employers

---

**9.** A "defined benefit" plan is one in which the formula for the employee's benefits is fixed at the outset (*e.g.,* three percent of the employee's average monthly salary during the last year of employment times the number of years employed. *See Sobel v. Yeshiva University,* 566 F.Supp. 1166, 1190 n. 59 (S.D.N.Y.1983).

in order to fund the increase in benefit payments. Moreover, the PERS reserves are more than adequate to support the increase in benefits formerly ordered by the district court.[10] These factors indicate that no inequitable result will occur if the Court awards increased benefits retroactive to the date of *Manhart*. After that date, an increase in the plaintiff class' benefits was more than a contingency—it was an eventuality that pension plan administrators surely contemplated when calculating contributions and appropriate reserves. *Cf. Manhart, supra*, 435 U.S. at 721, 98 S.Ct. at 1382 (pension plan amounts set aside to cover contingencies reflect assessment of insurer's likely liability).

In her concurrence, Justice O'Connor applied the three criteria set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), to reach her conclusion of nonretroactivity. *Norris, supra*, 103 S.Ct. at 3512 (O'Connor, J., concurring). One of these criteria is whether retroactivity will further or retard the operation of the statute. *Id.; see Chevron, supra*, 404 U.S. at 106–07, 92 S.Ct. at 355–56. While noting that one goal of Title VII is to make persons whole for injuries suffered from unlawful employment discrimination, Justice O'Connor thought that a retroactive holding was not necessary to ensure that pension plan administrators would "quickly conform their plans to insure that individual employees are allowed equal monthly benefits regardless of sex." *Norris, supra*, 103 S.Ct. at 3512. Here, in contrast, the State has continued to pay pre-1977 employees discriminatory benefits for over six years after the *Manhart* decision. It is paying such benefits today. Certainly it would be inequitable to require equalization of benefits paid prior to *Manhart*, but no such inequity results from equalization of post-*Manhart* benefits. Rather, the adjustment of all post-*Manhart* benefits makes the plaintiffs whole, encourages

prompt compliance with the laws of the United States, and is consistent with the strong presumption in favor of retroactive relief necessary to remedy the effects of past discrimination. *See generally Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Accordingly, the Court finds that a monetary award of equalized benefits retroactive to the date of the *Manhart* decision is appropriate relief in this case.

## IV

### A

Based on facts which have recently "come to light," plaintiffs seek a modification of the class pleaded in the complaints and formerly certified. Plaintiffs argue that in September 1977 the California Legislature amended § 20600.1 of the Government Code to permit the use of sex-based actuarial tables to calculate certain "optional" retirement payments. Plaintiffs state that the discriminatory practices ceased in July, 1982. Citing no authority, plaintiffs request that this Court strike the class closing date of January 1, 1977, which reflected the State's purported abandonment of all sex-based actuarial tables, and declare the practice illegal.

The trial judge enjoys a wide range of discretion in overseeing all aspects of class action litigation. *In re Northern District of California "Dalkon Shield" IUD Products Liability Litigation*, 526 F.Supp. 887, 894 (N.D.Cal.1981), *citing Price v. Lucky Stores Inc.*, 501 F.2d 1177, 1182 (9th Cir.1974). Plaintiffs in essence seek to add a subclass of plaintiffs whose existence was never raised during this litigation, despite the fact that the California Legislature acted almost seven years ago to permit the use of sex-based actuarial tables to calculate certain "optional" retirement payments. There is nothing before this Court that indicates that this

---

**10.** According to the PERS 1978 Annual Report and the affidavit of Thomas Crocker, PERS actuary, a sex-equalized increase in benefit payments for pre-1977 "miscellaneous" PERS retirees (the majority of the members affected) would require an annualized outlay" of $1.8 million. Total actuarial reserves equal $3.7 bil-

lion. According to Mr. Crocker's highest estimates, $38 million would be required to increase class benefits retroactively to the date each person *retired*. However, the relief contemplated here would require retroactive application only to April 25, 1978.

"new" subclass would meet the requirements for maintenance of a class action. *See Officers for Justice v. Civil Service Commission of San Francisco,* 688 F.2d 615, 630 (9th Cir.1982) (each subclass must independently meet the requirements for maintenance of a class action), *cert. denied,* 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). Accordingly, plaintiffs' motion to amend the class is denied.

B

Plaintiffs' third claim for relief in the 1977 complaint states that § 21251.13 of the California Government Code requires post-1971 retirees be paid gender-equalized benefits, and states that defendant Board of Administration of the Public Employees Retirement System has a "ministerial duty under the Government Code to compute and pay said retirement benefits in accordance with the Government Code." Plaintiffs seek a mandatory injunction requiring the Board to comply with the terms of the Code. Defendants argue that under the Eleventh Amendment, as construed in the recent case of *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Court is prohibited from ordering injunctive relief against the State on a pendent state claim. Plaintiffs do not respond to this argument.

Although the Court's jurisdiction over plaintiffs' third claim is founded on the doctrine of pendent jurisdiction, the Eleventh Amendment is an explicit limitation on the judicial power of the United States. *Id.* at 918. In *Pennhurst,* the Supreme Court overturned an award of injunctive relief against state officials and agencies based on a pendent state law claim. The Court found that the Eleventh Amendment was a constitutional bar to a federal court's jurisdiction over a pendent state claim against the state and state officials and agencies. *Pennhurst* is controlling here. Therefore, this Court is without jurisdiction to consider plaintiffs' third claim for relief in the 1977 complaint.

Accordingly,

IT IS HEREBY ORDERED that in the *Retired Public Employees'* case, plaintiffs'

motion for summary judgment is GRANTED, and defendants' motion for summary judgment is DENIED, and in the *Gunn* case, plaintiff's motion for summary judgment is GRANTED. Therefore,

1. The State defendants are enjoined from using sex-based mortality tables to calculate monthly benefit payments to the plaintiff class.

2. From the date of this Opinion forward, the State defendants shall equalize the benefits paid to disadvantaged members of the plaintiff class by raising monthly benefits to the level received by similarly-situated members of the opposite sex without reducing any benefits to any PERS members.

3. The State defendants shall make such payments retroactive to April 25, 1978, the date of the *Manhart* decision that declared defendants' practices illegal.

4. Plaintiffs' motion to amend the class is denied.

5. Plaintiffs' third claim for relief, set forth in the 1977 complaint, is dismissed without prejudice.

6. Plaintiffs shall submit a detailed request for attorney's fees by a motion noticed in accordance with the Local Rules.