Mahendra Kumar JAIN, Plaintiff,

v.

UNIVERSITY OF TENNESSEE AT
MARTIN, Defendant.

No. 81–1122.

United States District Court,
W.D. Tennessee, E.D.

Aug. 17, 1987.

Mahendra Kumar Jain, pro se.

Beauchamp E. Brogan, Gen. Counsel and Ronald C. Leadbetter, Associate Gen. Counsel, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

TODD, District Judge.

In this 42 U.S.C. § 1983 action, plaintiff Mahendra K. Jain (Jain) contends that his employer, defendant University of Tennessee at Martin (UTM), made unlawful employment decisions infringing his constitutional rights. UTM previously moved to dismiss the complaint on the basis of sovereign immunity. On August 6, 1986, this court denied UTM's motion to dismiss, concluding that the record was inadequate to satisfy the nine-factor test for sovereign immunity articulated in *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299 (6th Cir.), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1984). The August 6, 1986, order granted UTM leave to raise the defense of sovereign immunity in a properly supported motion for summary judgment.

UTM now moves for summary judgment on the issue of sovereign immunity. Plaintiff has responded to the motion. This court has considered the pleadings, the materials in the record and the applicable law, and concludes that UTM's motion for summary judgment should be granted.

## ANALYSIS

UTM's contends that it is an arm of the State of Tennessee, and therefore enjoys Eleventh Amendment immunity from suit. The standard in this circuit for analysis of sovereign immunity claims is set forth in *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299 (6th Cir.), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1984).

In *Hall*, a former medical student of the Medical College of Ohio at Toledo (MCOT) brought a race discrimination action against MCOT and various university officials, alleging violations of 42 U.S.C. §§ 1981, 1983 and 2000d. One of the issues presented was whether the Eleventh Amendment barred the action against MCOT. Finding that it did in that case, the *Hall* court noted that the issue depended upon whether the university could "be characterized as an arm or alter ego of the state, or whether it should be treated instead as a political subdivision of the state." 742 F.2d at 301. To make this characterization, the *Hall* court used a nine-factor analysis first articulated by the Third Circuit Court of Appeals in *Blake v. Kline*, 612 F.2d 718 (3d Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980). The *Blake* factors are:

1) the university's status and nature under local law and decisions;

2) whether payment of any judgment would come from the state treasury;

3) whether the university has the funds or power to satisfy the judgment;

4) whether the university is performing a governmental or proprietary function;

5) whether the university has been separately incorporated;

6) the degree of autonomy the university has over its operations;

7) whether the university has the power to sue and be sued and to enter into contracts;

8) whether university property is immune from state taxation; and

9) whether the state has immunized itself from responsibility for the university's actions.

*Hall,* 742 F.2d at 302. The most important factors, according to *Hall,* are whether payment of any judgment would actually come from the state treasury and whether the university has the funds or power to satisfy a monetary judgment. *Id.,* 742 F.2d at 304.

It is significant that "[t]he great majority of cases addressing the question of Eleventh Amendment immunity for public colleges and universities have found such institutions to be arms of their respective state governments and thus immune from suit." *Hall,* 742 F.2d at 301. A representative list of decisions holding public colleges and universities immune can be found in *Hall,* 742 F.2d at 301–02.

Recognizing the marked tendency of the courts to find public universities and colleges immune under the Eleventh Amendment, this court must now analyze the present case with reference to the *Hall* nine-factor test for immunity. This court's inquiry is aided by information supplied in the affidavit of Emerson H. Fly, a University of Tennessee (UT) Vice President of Business and Finance (Fly Affidavit). The analysis proceeds as follows.

## I. UTM'S STATUS UNDER LOCAL LAW AND DECISIONS.

■ UTM is an entity created by legislative charter. 1807 Pub.Acts ch. 64; 1839 Pub. Acts ch. 98. *See also* Tenn.Code Ann. §§ 49–9–101 et seq. and 1001. Case decisions have consistently held, with one exception, that UT and its various campuses were arms of the state for Eleventh Amendment purposes. *See Shelton v. City of Newport,* No. 2–86–296, Slip Op. (E.D. Tenn. Nov. 6, 1986) [Available on WEST-LAW, DCT database]; *Gross v. University of Tennessee,* 448 F.Supp. 245, 247–48 (W.D. Tenn.1978), *aff'd,* 620 F.2d 109 (6th Cir. 1980); *University of Tennessee v. Peoples' Bank of Martin,* 157 Tenn. 87, 6 S.W.2d 328, 330 (1928). One case did hold that the legislature might have waived sovereign immunity with respect to the University of Tennessee as a result of ambiguity perceived by that court in a Tennessee statute allowing the university to sue or be sued. *Soni v. Board of Trustees of the University of Tennessee,* 513 F.2d 347

(6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). However, *Soni* now has questionable validity. Following the *Soni* decision, the Tennessee legislature amended the state's sovereign immunity statute to provide:

> [n]o statutory or other provision authorizing the University of Tennessee and its board of trustees to sue and be sued shall constitute a waiver of sovereign immunity.

Tenn.Code Ann. § 20–13–102(b). This court has since held "[t]he Tennessee General Assembly has expressed its specific intent that the charter provision not be construed as an implied waiver of Eleventh Amendment protection for the University," and has questioned "the continued vitality of *Soni;*" as a result, the university was accorded Eleventh Amendment immunity. *Gross,* 448 F.Supp. at 247–48, *aff'd,* 620 F.2d 109 (6th Cir.1980). This court adopts the reasoning in *Gross,* and concludes that UTM is an "arm of the state" for Eleventh Amendment immunity purposes.

## II. ANY MONETARY JUDGMENT AGAINST UTM WOULD BE PAID OUT OF THE STATE TREASURY.

■ A determination that a monetary judgment against UTM would be paid from funds other than state treasury funds would exalt form over substance. UT derives more than one-third of annual funding from direct legislative appropriations. It does generate revenues from tuition; user fees; housing and food service operations; federal, state and private grants and contracts; and gifts (Fly Affidavit at 2); these non-legislative funds may be retained by the university pursuant to statute. Tenn.Code Ann. § 9–4–303. However, such a system which avoids the redundancy of having to turn over self-generated revenues to the state treasury, only to have those funds returned by appropriations to the generating agency, does not preclude sovereign immunity. *Hall,* 742 F.2d at 304–05.

UT's financial affairs are closely structured and monitored by the legislature. The university is required to present annu-

al reports to the state, Tenn.Code Ann. § 49–9–208; its finances are subject to state audit, Tenn.Code Ann. § 8–4–109; and it is accountable to the state for compliance with state comptroller regulations and directives. Tenn.Code Ann. § 8–4–109(c). While the university is empowered to issue bonds and borrow money, this power is confined to specifically enumerated, limited transactions which do not include borrowing money to pay judgments. Tenn. Code Ann. § 49–3–1201 et seq.

While it is true that any outlay of money by UT might not be directly traceable to appropriations, any outlay of funds from a source not purely legislative would certainly have an impact upon legislative appropriations. Thus, diminution of non-legislative funds would require enlargement of appropriations to replenish the funds expended. In light of this relationship, this court must agree with the reasoning expressed by the Tennessee Court of Appeals:

> [i]n our opinion ... it [is] clear that private contributions, as well as revenues generated by a department of a state educational institution, become state funds and are thus protected by the sovereign immunity of a state. If a plaintiff were to be permitted to sift through the coffers of a state institution in order to discover which of its funds originated from private sources and which did not, the very purpose of sovereign immunity would be defeated. T.C.A. § 20–13–102(a) bars not only suits with a view to reach state funds, but also suits "with a view to reach the state" itself.

*Greenhill v. Carpenter,* 718 S.W.2d 268, 272 (Tenn.Ct.App.1986) (Memphis State University athletic department funds, acquired from private sources, protected by sovereign immunity).

This court concludes that, due to the financial system of UTM and its close link with state finances, any judgment against UTM has the effect of a liability payable from the state treasury. *See Hall,* 742 F.2d at 305; *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 560–61 (5th Cir.1982); *Jagnandan v. Giles,* 538 F.2d 1166, 1176 (5th Cir.1976), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977).

### III. WHETHER UTM HAS THE FUNDS OR POWER TO SATISFY A JUDGMENT.

The Tennessee legislature has exhibited its specific intent that funds of the university be protected by sovereign immunity. Tenn.Code Ann. § 20–13–102(a) and (b). More recently, the legislature emphasized the restrictions upon UT's authority to pay judgments:

> [e]xcept where sovereign immunity has been or shall hereafter be expressly waived by the General Assembly, all appropriations of state funds and institutional revenues made in this Act and prior acts to institutions of higher education shall be state funds and shall be protected by the state's sovereign immunity from any court's judgment, decree, attachment, or other legal process, provided that any statutory or other provision authorizing any entity to sue and be sued shall not constitute a waiver of sovereign immunity.

1986 Tenn.Pub.Acts ch. 937 § 35, item 8. Absent waiver of sovereign immunity, no public money may be spent except by lawful appropriations. Tenn.Const. art. II, § 24.

In view of the command of the cited Tennessee constitutional statutory and public law provisions, it is clear that UTM does not have the funds or power to satisfy a monetary judgment.

### IV. WHETHER THE UNIVERSITY IS PERFORMING A GOVERNMENTAL OR PROPRIETARY FUNCTION.

"Providing facilities and opportunities for the pursuit of higher education is long recognized governmental function." *Hall,* 742 F.2d at 305; *see Vaughn v. Regents of University of California,* 504 F.Supp. at 1353. Therefore, with respect to UTM's employment decisions affecting plaintiff, the university was engaged in a governmental function.

## V. WHETHER THE UNIVERSITY HAS BEEN SEPARATELY INCORPORATED.

■ UT has been conferred corporate status by the state legislature. However, the creation of the corporation was apparently a convenient means to allow the university to pursue the ends of higher education:

> [t]he state and the public represented by it must be considered as the owner of the property held by the University, and the sovereign character of the state's ownership is not changed by the creation of the corporation as a convenient means through which the state exercises the strictly governmental function of educating the young among its citizens. We are not able to find that the state has lost or divested itself of any element of sovereignty in the creation of this corporation which is subject to the will of the legislative branch of the state government in every particular, and the only purpose of which is to perform a governmental function.

*Peoples' Bank of Martin,* 6 S.W.2d at 330.

It is instructive that the corporate form of colleges and universities, or their incorporated governing boards, has not prevented courts from finding that these institutions possessed Eleventh Amendment immunity. *See Jagnandan,* 538 F.2d 1166, *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977) (Mississippi State University); *Gross,* 448 F.Supp. 245 (University of Tennessee). Accordingly, this court concludes that Tennessee's choice of a corporate form through which to pursue the goal of providing higher education, while retaining legislative control over the corporation, does not operate as a waiver of sovereign immunity with respect to that institution. See, e.g., *Patsy v. Board of Regents,* 457 U.S. 496, 521 n. 4, 102 S.Ct. 2557, 2570 n. 4, 73 L.Ed.2d 172 (1982) (Powell, J., dissenting).

## VI. THE DEGREE OF AUTONOMY THE UNIVERSITY HAS OVER ITS OPERATIONS.

■ UTM is subject to extensive legislative control. The existence of the UT Board of Trustees automatically expires at specified intervals unless renewed by legislative enactment. Tenn.Code Ann. §§ 4–29–101, 108; Tenn.Code Ann. § 49–29–205 (UT Board of Trustees terminates June 30, 1984) (superseded); Tenn.Code Ann. § 4–29–211 (UT Board of Trustees terminates June 30, 1990).

The governor, and individuals appointed by him (subject to senate confirmation), compromise all but two of the members of the Board of Trustees. Tenn.Code Ann. §§ 49–9–201, 202. Board members are bonded by a general surety bond obtained by the State Department of Finance and Administration. Fly Affidavit at 6; Tenn. Code Ann. § 4–4–108.

As noted previously, the state controls many facets of the university's financial operations, including specifying accounting procedures, conducting audits, and requiring in-depth operational reports. State law controls the purposes and issuance of bonds by the university. The state legislature exercises authority over the university's compensation of employees [1986 Tenn.Pub.Acts ch. 937 § 35]; maintenance and operations of the university's physical plants [1986 Tenn.Pub.Acts ch. 937 § 35, item 3]; and tuition fee charges [1986 Tenn.Pub.Acts ch. 937 § 35, item 5].

Legislative control pervades many other aspects of the university's operations. *See, e.g.,* Tenn.Code Ann. §§ 12–2–115; 12–3–103 (leases); 12–2–112 (dispositions of surplus property); 12–4–109, 110 (personal services contracts); 49–7–201 (Higher Education Commission); 9–8–109(b) (contributions to Claims Commission). It is apparent that any autonomy UTM might have is miniscule compared to the authority exercised by the state.

## VII. WHETHER THE UNIVERSITY HAS THE POWER TO SUE AND BE SUED AND TO ENTER INTO CONTRACTS.

UT has the power to sue and be sued; however, in the aftermath of the *Soni* case (*see* discussion, § I, *supra* ), the legislature negated any concern that the power to sue

or be sued operated as a waiver of sovereign immunity:

> [n]o statutory or other provision authorizing the University of Tennessee and its board of trustees to sue and be sued shall constitute a waiver of sovereign immunity.

Tenn.Code Ann. § 20–13–102(b).

The university is empowered to enter into contracts, but this power is circumscribed and controlled by the legislature. *See, e.g.,* Tenn.Code Ann. §§ 12–2–115 (leases); 12–3–103 (purchases); and 12–4–109 (personal service contracts).

## VIII. WHETHER UNIVERSITY PROPERTY IS IMMUNE FROM STATE TAXATION.

All of the university's property belongs to the state; it is fully exempt from taxation. Tenn.Code Ann. § 67–5–203(a)(2). The university is exempt from sales tax also. Tenn.Code Ann. § 67–6–329(13); Fly Affidavit at 6.

## IX. WHETHER THE STATE HAS IMMUNIZED ITSELF FROM RESPONSIBILITY FOR THE UNIVERSITY'S ACTIONS.

While the state has jealously sought to preserve the sovereign immunity of the university, it has provided mechanisms by which certain claims against the state, its agencies, officials and employees might be paid. Tenn.Code Ann. § 9–8–101 et seq. (Board of Claims Act); Tenn.Code Ann. § 9–8–301 et seq. (Tennessee Claims Commission Act). Legitimate claims under these acts are satisfied from a segregated fund of the state treasury. Tenn.Code Ann. § 9–8–109(a) and (c).

The state has waived sovereign immunity to a certain degree by instituting the Board of Claims and the Claims Commission; however, it has specifically limited this waiver to preserve sovereign immunity for those areas of operation not specifically covered by the Claims Acts. Tenn.Code Ann. §§ 9–8–112(b); 9–8–307(g); and 9–8–112. Accordingly, although the state has not completely immunized itself from responsibility for the university's actions, it has specifically limited its waiver of immunity.

## CONCLUSION

In light of the preceeding *Hall* nine-factor analysis of the present case, it is clear that UTM is not autonomous from, and is financially dependent on, the state of Tennessee. This court concludes that UTM is an arm of the state entitled to Eleventh Amendment immunity from suit. Accordingly, UTM is entitled to summary judgment as a matter of law. UTM's motion for summary judgment is GRANTED. The complaint is DISMISSED.

IT IS SO ORDERED.