**Ann Q. HAIR**

v.

**TENNESSEE CONSOLIDATED RETIREMENT SYSTEM, et al.**

No. 3–91–0154.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 29, 1992.

Irene R. Haude, John A. Beam, III, Myers, Holland & Beam, Nashville, Tenn., for plaintiff.

Virginia Jeter Barham, Mary Elizabeth Walker, Office of Atty. Gen., Nashville, Tenn., for defendant, Tennessee Consol. Retirement System.

H. David Stuart, III, defendant pro se.

## ORDER

HIGGINS, District Judge.

The Court has before it the Magistrate Judge's Report and Recommendation entered March 9, 1992 (Docket Entry No. 82); plaintiff's objections to the Report and Recommendation (filed March 23, 1992; Docket Entry No. 84) and response of the defendants, Tennessee Consolidated Retirement System and its Board of Trustees (filed April 2, 1992; Docket Entry No. 87).

The plaintiff's objections raise no new issues not considered by the Magistrate Judge and they are overruled. The Magistrate presented a well reasoned analysis and his Report and Recommendation is adopted and approved in all respects.

Accordingly, the motion (filed April 8, 1991, Docket Entry No. 5) of the defendants, Tennessee Consolidated Retirement System and the Board of Trustees [1] of the Tennessee Consolidated Retirement System, to dismiss for lack of subject matter jurisdiction is granted, and this action is dismissed with prejudice as to said defendants.

This action is remanded to the Magistrate Judge for further consideration of the

---

1. Each of the defendant trustees have been sued only in his or her official capacity as a member of the Board of Trustees of the Tennessee Consolidated Retirement System.

remaining motions presently pending in this action.

It is so ORDERED.

## REPORT AND RECOMMENDATION

Entered March 9, 1992

SANDIDGE, United States Magistrate Judge.

By an Order entered May 17, 1991, the above-captioned action was referred to the undersigned for consideration and recommendation of the motion of the defendants, Tennessee Consolidated Retirement System ["TCRS"] and the Board of Trustees of the TCRS, filed April 8, 1991, Docket Entry No. 5, to dismiss for lack of subject matter jurisdiction. Oral argument was held before the undersigned on August 27, 1991.

## BACKGROUND

Plaintiff Ann Q. Hair, a citizen of the State of Colorado, filed this diversity action against the TCRS and the individual members of the TCRS Board of Trustees in their capacities as members of the Board. The function of the TCRS is investing funds of its members and administering the various state employees' pension plans. Plaintiff also sues an employee of TCRS and member of its investment staff, H. David Stuart, III. As relief plaintiff seeks over $20 million in compensatory damages, and $25 million in punitive damages.

Plaintiff filed this suit for fraudulent inducement and breach of contract, claiming that she was fraudulently induced into investing in two pieces of property in Plano, Texas, situated adjacent to the Southfork Ranch, site of the television show "Dallas." Plaintiff is a partner in two companies who own the two parcels of real estate. Plaintiff claims that she was induced to make substantial investments in this property by defendants' representations that they de-

sired to purchase the property. Plaintiff alleges that David Stuart personally visited the Texas property and forged a fictitious letter expressing TCRS's desire to buy the property, which the TCRS never purchased.

## CONCLUSIONS OF LAW

▮ Defendants argue that the Court's exercise of jurisdiction over the TCRS and its Board of Trustees is barred by the Eleventh Amendment.[1] A state or one of its agencies cannot be sued regardless of the nature of the relief sought, unless the state has consented to suit. *Pennhurst v. Halderman*, 465 U.S. 89, 100–101, 104 S.Ct. 900, 907–908, 79 L.Ed.2d 67 (1984). Tennessee has not consented to suit. Legislative waivers of sovereign immunity must be "clearly and unmistakably" stated. *Scates v. Board of Commissioners of Union City*, 196 Tenn. 274, 277, 265 S.W.2d 563, 565 (1954). The State of Tennessee has expressly preserved its sovereign immunity. *See* T.C.A. § 20–13–102.

The question raised in the defendants' motion to dismiss for lack of subject matter jurisdiction is whether the State of Tennessee is the real party in interest, i.e., whether the TCRS is the alter ego of the State of Tennessee, thus rendering this action against TCRS and its Board of Trustees barred by the Eleventh Amendment. Using the same alter ego test, defendants also argue that they are not citizens for purposes of diversity jurisdiction.

▮ A nine-part test for determining if the defendant is the alter ego of the State was set forth in *Jain v. University of Tennessee at Martin*, 670 F.Supp. 1388 (W.D.Tenn.1987), affirmed without opinion, 843 F.2d 1391 (6th Cir.1988), where the Court determined that an action against the University of Tennessee was barred by the Eleventh Amendment. 1) The agency's

---

1. The Eleventh Amendment provides:
 The judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

 The Supreme Court has held that the Amendment also bars suit in federal court against the state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1889).

status and nature under local law and decisions; 2) Whether payment of a judgment will come from the state treasury; 3) Whether the agency has the funds to satisfy the judgment; 4) Whether the agency is performing a governmental or proprietary function; 5) Whether the agency has been separately incorporated; 6) The degree of autonomy the agency has over its operations; 7) Whether the agency has the power to sue and be sued and enter into contracts; 8) Whether the agency property is immune from state taxation; and, 9) Whether the state has immunized itself from responsibility for the agency's actions.

The most important factors are whether payment of a judgment will come from the state treasury, and whether the agency has the funds to satisfy the judgment. *Id.*, at 1390, citing *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 304 (6th Cir.), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1984). *Jain* also noted the helpfulness of looking at the decisions of other courts in assessing whether analogous state agencies are the alter ego of their state. *Id.*, at 1390.

Several courts have examined the question of whether the state retirement system is the alter ego of the state. The courts are divided on the issue, and the division stems from whether the judgment would be satisfied by the funds of the retirement system or rather from an appropriation by the state legislature. Compare *Fitzpatrick v. Bitzer*, 519 F.2d 559, 565 (2d Cir.1975), reversed on other grounds 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (holding that the Connecticut retirement system was the alter ego of the state primarily because under the state statutory scheme "a judgment against the fund would automatically increase the obligations of the general state treasury and amount to a judgment against the state") with *Almond v. Boyles*, 612 F.Supp. 223,

227–28 (D.N.C.1985), affirmed in pertinent part 792 F.2d 451, 456 (4th Cir.1986) (holding that suit not barred by Eleventh Amendment because North Carolina retirement system fund itself would supply the money for the judgment and "the defendants have not shown the court that the relief requested by the plaintiffs would inevitably lead to an additional appropriation of state funds." 612 F.Supp., at 228.) *See also In re Lyons*, 118 B.R. 634, 638–39 (C.D.Ill.1990) (holding that action by bankruptcy trustee seeking turnover of debter's contributions to Illinois State Employees' Retirement System not barred by Eleventh Amendment because the court determined that the retirement system could pay the judgment without invoking the state's statutory guarantee of payment of retirement system benefits. *Id.*, at 639); *Mello v. Woodhouse;* 755 F.Supp. 923, 926 (D.Nev. 1991) (holding that Nevada retirement system was arm of the state for purposes of that lawsuit because judgment would require the state of Nevada to expend money from its state treasury); and *21 Properties, Inc. v. Romney,* 360 F.Supp. 1322 (N.D.Tex.1973) (holding that New York state retirement system was alter ego of the state because judgment would directly affect treasury of the state of New York).[2]

As with these other cases, the determination in the instant case comes down to whether a judgment would come from the funds of the TCRS or would require a special appropriation from the General Assembly. Most of the other *Jain* factors are essentially a draw as is aptly demonstrated by the parties' briefs. The other factors add very little to the analysis anyhow, as the outcome is determined by the payment of the judgment issue.

 Before reaching this issue, one of the plaintiff's arguments must be disposed of. Plaintiff argues that the State cannot claim sovereign immunity for business enterprises conducted beyond its borders, and

---

**2.** *See also United States v. State of South Carolina*, 445 F.Supp. 1094, 1100 (D.S.C.1977); *Retired Public Employees Assoc. of California v. State of California*, 614 F.Supp. 571, 581 (D.C.Calif.1984) reversed on other grounds, 799 F.2d 511 (9th Cir.1986); and *Reiger v. Kansas*

*Public Employees Retirement System*, 755 F.Supp. 360 (D.Kan.1990) (all holding with very little analysis that state retirement systems are alter egos of the respective states, thus actions barred by the Eleventh Amendment).

thus, the State has waived its claim to immunity by David Stuart's actions in Texas. Plaintiff directs the Court to a passage in *City of Cincinnati v. Commonwealth of Kentucky*, 292 Ky. 597, 167 S.W.2d 709, 714 (Ct.App.1942), stating, "even a state may not claim sovereign immunity for its business enterprises conducted beyond its borders." However, this was dicta in a case discussing the income tax liability of the City of Cincinnati to Kentucky for rental income derived from a railroad owned by the City. The above-quoted passage in *City of Cincinnati* cites to the Supreme Court case of *State of Georgia v. City of Chattanooga*, 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796 (1923), where the Court discussed the rights of the State of Tennessee to regulate a railroad owned by the State of Georgia extending into Tennessee. The Court held that the State of Georgia was not immune from suit, stating,

> [T]he sovereignty of Georgia was not extended into Tennessee. Its enterprise in Tennessee is a private undertaking. It occupies the same position there as does a private corporation authorized to own and operate a railroad and as to that property it cannot claim sovereign privilege or immunity.

*Id.*, at 481, 44 S.Ct. at 370.

It is apparent that this principle is not based on the fact that the State is conducting business outside its borders, but the fact that the State was acting as a private corporation in operating its railroad. *See also, The Bank of the United States v. The Planter's Bank of Georgia*, 9 Wheat 904, 907, 6 L.Ed. 244 (1824) (holding that Eleventh Amendment not bar to suit against bank owned by State of Georgia because state acts in the nature of a private corporator). In other words, the railroad owned by the State of Georgia, the Western and Atlantic Railroad, extending from Atlanta to Chattanooga, was not the alter ego of the State of Georgia. I believe this analysis dovetails with the alter ego analysis set forth by modern case law and need not detain the Court.

█ Where the court's subject matter jurisdiction is challenged by way of a motion filed under Federal Rule of Civil Procedure 12(b)(1), it is the plaintiff who has the burden of proving jurisdiction. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir.1986). The Court has a duty to resolve any factual disputes on a Rule 12(b)(1) motion. *Id.*, at 918. A Rule 12(b)(1) motion is not analogous to a Rule 12(b)(6) motion where if genuine disputes of material fact exist the motion should be treated as a motion for summary judgment under Rule 56 and denied. *Id.*, at 915.

█ Plaintiff submits the affidavit of Stephen L. Curry, Director of the TCRS, filed April 8, 1991. Curry explains that TCRS is part of the Tennessee Department of Treasury, and Treasury Department employees manage TCRS. For example, defendant David Stuart is a former employee of the Department of Treasury's investment staff. Curry attests that the TCRS does not have a fund for its operating expenses that is separate from the State's general fund. Every year TCRS submits its budget request for its operating expenses. They are accounted for in some detail, and for the fiscal year 1989–90, amounted to about five million dollars. Payments of this amount were made from the State general fund. It thus seems clear that a judgment of any amount could not be satisfied by the fund's operating expenses. The real question is whether a judgment against TCRS would be satisfied by the trust fund itself.

Curry further attests, "a judgment against TCRS in this lawsuit would require a special appropriation from the General Assembly." Affidavit, at ¶ 7. Curry explains his basis for this conclusory statement in his deposition (Exhibit B to plaintiff's supplemental memorandum received August 2, 1991). Curry testified that the TCRS fund is held in trust to pay death, disability and retirement benefits. Deposition, pp. 39–40, p. 82. Further, the fund is exempt from legal process by virtue of T.C.A. § 8–36–111. Deposition, p. 39. Curry's interpretation of the statutory scheme leading him to believe that a judg-

ment against TCRS would not be satisfied from the trust fund is plausible.

T.C.A. § 8–34–202 provides:

It shall have the powers, privileges and immunities of a corporation and shall be known as the "Tennessee Consolidated Retirement System," and by such name all of its business shall be transacted, all of its funds invested, and all of its cash and securities and other property **held in trust for the purpose for which received.** (emphasis added).

Defendants argue that the purpose for which the funds are received is to provide retirement allowances to eligible employees. *See* § 8–34–201. Thus, the funds are held in trust for this purpose and cannot be reached for payment of a judgment in this lawsuit.

Tennessee Code Annotated § 8–36–111 also supports defendants' argument that judgment could not be satisfied from the fund.

All retirement allowances and other benefits accrued or accruing to any person under the provisions of chapters 34–37 of this title, the accumulated contributions of members and the cash and securities in the funds created under chapters 34–37 of this title are exempt from any state, county, or municipal tax, and shall not be subject to execution, attachment, garnishment, or other process whatsoever, nor shall any assignment thereof be enforceable in any court.

Plaintiff argues that this section merely means that a judgment creditor of a member of TCRS cannot execute the judgment on the member's retirement account. Neither party cites a case or excerpt from the legislative history of this statutory provision to support their respective interpretations. Nonetheless, I am inclined to believe that Curry's interpretation of the statute as protecting the funds from execution in an action such as the present one is correct. The provision exempts from execution, etc., not only the retirement allowances "accruing to any person under the provisions" of the Act, but also "the accumulated contributions of members." And, I note that the statute protects the funds from "execu-

tion," a general term for the legal process of enforcing a money judgment, as well as the more specific forms of enforcement of "garnishment" and "assignment." A bar against garnishment and assignment alone would refer only to the accrued benefits of a particular member rather than to a judgment executed against the fund as a whole.

Plaintiff argues that T.C.A. § 8–37–102(d) authorizes payment of the judgment out of the fund. This Section reads,

For the purpose of meeting disbursements for state annuities, member annuities, **and other payments,** there may be kept available cash, not exceeding ten percent (10%) of the total amount in the funds of the retirement system, on deposit in one (1) or more banks, savings and loan associations or trust companies in the state, organized under the laws of the state or of the United States, and qualified as state depositories. (emphasis added).

Plaintiff argues that the use of the phrase "other payments" means that a disbursement from the fund can satisfy the judgment. However, once again plaintiff offers no cases or legislative history in support of this interpretation. Defendants argue that the provision cannot refer to execution of a judgment because this would amount to a waiver of the state's sovereign immunity and such waiver may only be made expressly. *See Scates v. Board of Commissioners, supra.* This argument is not persuasive because it presupposes TCRS is an arm of the State. Nonetheless, the use of the vague phrase "other payments" is rather unconvincing evidence that judgment would be satisfied from the fund in light of more specific evidence to the contrary.

Plaintiff's most persuasive argument is that if a judgment was paid out of the fund, this would result in a reduced actuarial valuation of the fund. To compensate for this, the unfunded accrued liability of the fund would increase and as well as the normal contribution rate of the member employers. The increased accrued liability would be amortized over a 40 year period as described in T.C.A. § 8–37–304. Thus, the Legislature would be making an ex-

penditure which would result in payment of a judgment, but this would be by the same means that the Legislature appropriates required funds to fulfill its contribution requirements for its member employees as described in Section 8–37–402. This is not an implausible method for payment of a large judgment. Indeed, if the fund were forced to satisfy the judgment, this is probably how it would deal with the loss and continue to meet its statutory obligations to its members. The fact that the fund could absorb the loss, however, is not proof that it would be required to do so.

Plaintiff also points out that there are two ways in which the TCRS is funded which would be in violation of the State Constitution if TCRS were an arm of the State. Therefore, the argument goes, TCRS must not be an arm of the State. These arguments are unpersuasive. First, plaintiff points out that TCRS's substantial unfunded accrued liability violates Article II, Section 24 of the Tennessee Constitution, providing in pertinent part that, "no debt obligation ... shall be authorized for the current operation of any state ... program" unless it can be "repaid within the fiscal year of issuance." But, as defendants point out, this unfunded accrued liability is a long-term debt obligation and is amortized over 40 years as is provided in Section 8–37–304. It thus does not fit within this constitutional prohibition.

Secondly, plaintiff points out that several statutory provisions allow for increasing the contribution share of cities and counties, in violation of the Tennessee Constitution, Article II, Section 24, providing that the Legislature shall not impose increased expenditures on cities and counties without the State sharing in the cost. Again, defendants defeat this argument by pointing out that the increased payments are optional for the cities and counties, not required, thus placing the activity outside the realm of a constitutional prohibition.

■ Plaintiff also notes the comingling of the payroll contributions of non-State TCRS members with State TCRS members. TCRS fund is available to a very limited number of non-State members. As defendants point out, this argument is unpersuasive. In *Jain v. University of Tennessee at Martin, supra,* the Court took note that UTM derives some of its annual funding from sources other than direct legislative appropriations, i.e., from tuition and grants, etc. 670 F.Supp., at 1390.

Plaintiff argues that Curry's attestation that a judgment would have to be paid by an appropriation from the General Assembly is conclusory. This is correct in that Curry does not cite to any specific examples from prior lawsuits against TCRS. But, his conclusion is supported by the statute, and in light of the fact that it is the plaintiff's burden to prove jurisdiction, and the plaintiff has not tendered persuasive proof on this issue, I conclude that defendants' motion to dismiss should be granted.

Based on the foregoing, I respectfully RECOMMEND that the motion to dismiss filed by defendant TCRS and its Board of Trustees be GRANTED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice, and must state with particularity the specific portions of this Report, or the proposed findings or recommendation to which objection is made. Failure to file objections within the specified time waives the right to appeal the District Court's Order. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).